[No. 24507.   Department One.   November 2, 1933.]

CHARLES B. SMITH, *Appellant,* v. D. R. DREW *et al.,*
*Respondents.*[1]

[1]Reported in 26 P. (2d) 1040.

12

*Moore, Higgins & Magee,* for appellant.

*Todd, Holman & Sprague* and *Lucien F. Marion,* for respondents.

STEINERT, J.—Plaintiff sought to recover damages upon two causes of action, one for an assault and the other for false arrest and imprisonment following the assault. Separate answers were filed by the defendants. Upon a trial by jury, a verdict was rendered in favor of plaintiff as to the defendant Ebley on the cause of action for assault; in all other respects, the verdict was in favor of all of the defendants. A motion for new trial having been overruled, judgment was entered upon the verdict, from which plaintiff has appealed.

The facts which respondents' evidence tended to establish may be summarized as follows: On the evening of July 6, 1931, respondent Jenks, accompanied by a young lady, drove to a point on a public highway north of the city limits of Seattle overlooking Puget Sound, for the purpose of viewing the sunset. They remained at the place until after dusk. While sitting in the front seat of the automobile, Jenks reached back into the tonneau for the purpose of obtaining a package of cigarettes, and, in looking through

the rear window, discovered a man, who later proved to be the appellant, stealthily crawling up to the rear of the automobile. Jenks quickly jumped from his car and asked appellant what he wanted. Without making any reply, appellant arose from his crouching position and ran into the brush nearby and disappeared.

Jenks and his companion then drove to the home of respondent Drew, a short distance away, and informed the latter that a prowler was in the vicinity. Respondent Ebley, who was at the Drew home at the time, volunteered to go back with Jenks to the place where the car had been parked, to see whether the prowler would appear again. Ebley took with him a flashlight and a revolver. Jenks then returned, with Ebley, to the place, parked the car and waited. In the meantime, another car had driven up and parked nearby.

After an interval of about thirty minutes, Drew followed in his own car and came up toward the place where the others were waiting. At about that time, Jenks and Ebley heard some one crawling through the brush toward the car in which they were sitting, and as the lights of Drew's car illuminated the surrounding terrain, they heard some one jump from their rear and hastily run back into the brush and down toward a ravine. Drew, Jenks and Ebley then gave chase, but, owing to the darkness, soon lost sight of the fugitive. With the aid of the flashlight, Ebley, who was ahead, finally discovered the appellant lying prone upon the ground, but intently watching his pursuers.

The three men surrounded the appellant as he lay upon the ground. Ebley commanded him to get up, at the same time telling him that he had him covered with his revolver. Appellant failed to move. Ebley then cautiously approached appellant, and, after some

further command to get up, struck him on the head with the end of his revolver; Ebley did this, however, at his own initiative and without any suggestion, or any anticipation of the act, on the part of Drew or Jenks. Appellant then arose and, as he did so, threw his arms outward as though tossing something away.

The three men searched appellant to ascertain whether he was armed, and then told him that they were going to take him to the police station. To regain the road, it was necessary to go upgrade through the brush. Jenks and Drew took hold of appellant's arms and attempted to pull him along. Appellant refused to walk, and, consequently, the two men had to drag him. Ebley, who was in the rear, proceeded to kick appellant in the seat several times, and, by this means, appellant was induced to accompany his captors. Arriving at the Jenks car, all four men proceeded to the Wallingford police station in the city of Seattle. The circumstances of the arrest were there narrated to the police officers. The latter, however, declined to do anything in the matter, because the occurrence had taken place outside the city limits.

The officers then suggested that the sheriff be notified. After one of the officers had established telephone communication with the sheriff, Drew related to one of the deputies the circumstances of the arrest. Respondents then left appellant in the custody of the police and returned home. Later on in the same evening, several deputy sheriffs arrived at the police station and took appellant to the county jail, where he was kept imprisoned for several days. Finally, appellant was able to obtain the necessary bail and was released, but, on the day of his release, the sheriff lodged a vagrancy complaint against him. This, however, was done without any suggestion, request or participation on the part of any of the respondents.

Thereafter, appellant was convicted in the justice court on the charge of vagrancy lodged against him by the sheriff. Respondents testified at the trial. From the judgment of conviction, appellant took an appeal to the superior court. Before the time of trial on appeal had arrived, the case was dismissed on motion of the prosecuting attorney. This, also, was without the knowledge or suggestion of any of the respondents. Several days after his release from jail, appellant returned to the place where he had been captured, and was observed making a careful search of the ground as though he were looking for some small object. By his own admissions on cross-examination, it appears that appellant had previously served six months in the county jail upon a conviction for petit larceny.

Appellant's version of the affair was quite different. His testimony was that, on the day in question, he had spent some time in the neighborhood of the place where the above events occurred, trying to collect some bills that were owing to him as a lathing contractor; that he had taken a pail with him and had spent the afternoon picking blackberries; that, while going through the brush and over logs, he had fallen and injured his leg; that he lay down and either lost consciousness or else went to sleep; that, on awakening, around dusk, he realized that he was unable to walk and called for help; that, in response to his call, the respondents appeared and after some parley began to abuse and assault him by beating and kicking him and striking him over the head with a revolver, concluding their assault by taking him to the police station and there causing his arrest and imprisonment.

The two stories were widely conflicting, and presented a case for the jury upon the evidence. The

verdict reflects the jury's view that the events transpired substantially as respondents related them, but that Ebley had used excessive force in striking appellant with his revolver.

Appellant's first assignment of error is based upon the overruling of his demurrer to respondents' several answers. Assuming that the answers were defective in some respects, there was sufficient evidence introduced by respondents, without objection by appellant, to sustain the verdict and judgment. The pleadings will therefore be considered amended to conform to the proof. *Reynolds v. Dickson*, 48 Wash. 407, 93 Pac. 910; *Miles v. Fletcher*, 140 Wash. 415, 249 Pac. 781.

Appellant's second assignment of error is based upon the refusal of the court to give a requested instruction relative to the conditions under which an arrest by a private person, without a warrant, is justified. The court gave a very comprehensive instruction covering the law of arrest in both felony and misdemeanor cases. The instruction as given was not excepted to. A comparison of the court's instruction with that requested by appellant reveals that all of the elements of the latter are contained in the former, with the exception of a provision in the requested instruction which described and defined breaches of the peace as being limited to "fighting or rioting."

The omitted portion of the requested instruction was not a correct statement of law. The term "breach of the peace" is a generic term, and includes all violations of the public peace or order calculated to disturb the public tranquillity enjoyed by citizens of a community. Illustrations are legion, and in many of them "fighting or rioting" is not a necessary element at all. See Brill, Cyc. Crim. Law, Vol. 2, § 957, *et seq.;* 9 C. J. pp.

386-388; 8 R. C. L. p. 285, § 306; Desty, American Crim. Law, § 91a.

Appellant's third assignment of error is based upon the court's refusal to give the following requested instruction:

"The court further instructs you that all persons who participate in an unlawful act are jointly liable therefor, irrespective of the extent of participation. This includes any and all persons who command, instigate, promote, encourage, advise, countenance, cooperate in, aid or abet in the commission of a wrongful act by another, *and each one is liable as a principal to the same extent and in the same manner as if he had performed the wrongful act himself. The law does not segregate the amount against any one defendant, and you should return only one verdict and that verdict should be against all of the defendants.*" (Italics ours.)

The court gave that portion of the requested instruction which is not italicized. The italicized portion was not given, and, we think, properly so. The first clause of the omitted portion is a mere repetition or paraphrase of the preceding portion of the requested instruction. The concluding sentence of the requested instruction 'is manifestly incorrect, because it was equivalent to directing a verdict for appellant on both causes of action, regardless of the issue of justification or that of separate liability on the part of respondents.

From the evidence submitted to the jury, it had the right to find that appellant was, at the time, engaged in a repeated attempt to rob or steal from the occupants of the automobile, and that such attempt was frustrated, in the first instance, by the act of respondent Jenks, and in the second instance, by the discovery of appellant, followed by the subsequent pursuit and apprehension. Appellant, therefore, was not entitled to a directed verdict. The matter of separate

liability is covered under the next assignment of error.

■ The appellant next complains of the following instruction:

"If you find that defendants lawfully apprehended plaintiff under the evidence as submitted and the law as I have given it to you, then you must consider whether the force used in making the arrest was reasonable or necessary under all the circumstances. On this latter point I have instructed you. In considering the liability, if any, of each of the defendants on the matter of force used, I instruct you that the fact alone that the defendants Drew and Jenks were present when the defendant Ebley hit the plaintiff on the head with his pistol will not warrant you in returning a verdict against all three defendants for the injury sustained by the plaintiff from such blow. The defendant Ebley alone would be liable for such blow, if you find him liable at all, unless you further find that in so striking plaintiff, Ebley acted in connivance with, or with the concurrence of, or in concert with Mr. Drew and Mr. Jenks.

"You are further instructed that all persons who participate in an unlawful act are jointly liable therefor irrespective of the extent of participation. This includes any and all persons who command, instigate, promote, encourage, advise, countenance, cooperate in, or aid or abet in, the commission of a wrongful act by another."

This is a correct statement of law. Under the evidence, the jury was privileged to find, as it obviously did, that the arrest was lawful under the court's instruction, and that, in making the arrest, Jenks and Drew used only necessary and reasonable force, while the force used by Ebley in striking appellant with the revolver was excessive.

An officer making a lawful arrest may use such force as is reasonably necessary to secure and detain the offender, overcome his resistance, prevent his escape, and secure him if he escapes. What is reasonable force

is a question of fact, under all the evidence, to be determined by the jury. A private person, if the arrest by him be lawful, is accorded the same right and privilege in accomplishing the purpose. 5 C. J. 424-5.

The appellant next assigns as error the giving of certain instructions defining robbery, larceny and attempt to commit a crime. The instructions define these various crimes according to their statutory meaning, and there is no contention that they are incorrect statements in that respect. It is merely contended that there was no evidence to justify their being given at all. It is true that the evidence did not establish a completed crime, either of robbery or of larceny, but the evidence, which we have already detailed, was sufficient to warrant the jury in believing and finding that appellant was, upon the occasion, engaged in an attempt to commit either robbery or larceny. Such an attempt is, by the statute, a crime of itself, and punishable as such. Therefore, in order to fully and correctly inform the jury as to what constitutes an attempt to commit robbery or larceny, it was necessary and proper to define those offenses.

The appellant next assigns as error the giving of an instruction on vagrancy, described as being committed in the city of Seattle. The attack upon this instruction is three-fold: (1) that respondents did not arrest appellant for vagrancy; (2) that appellant was not guilty of vagrancy; and (3) that the events occurred outside the city limits of Seattle.

Respondents having apprehended appellant upon fresh pursuit immediately after the commission of the act or acts, it was not necessary for them to advise him of the offense for which he was being arrested. When a single act constitutes more than one crime, the person making the arrest may justify the arrest upon the ground of any offense established by the act. More-

over, if the person arrested knows the reason for his arrest, as the evidence here warranted the jury in finding, it is unnecessary to further advise him of the cause or reason therefor.

The jury was privileged to find, under the evidence, that appellant was prowling about and creeping up on parked automobiles and their occupants, in the night time, under circumstances which indicated an intent to commit a crime, and that his business in the community was not a lawful one. This constituted vagrancy under the statute. Rem. Rev. Stat., § 2688, subd. 8. It is true that the scene of the events was outside the limits of Seattle, and to that extent the instruction was not entirely correct. This was a mere inaccuracy, however, and unimportant in any event. The act, if established, would constitute vagrancy, whether committed within or without the city limits. Besides, the complaint of vagrancy was not lodged by, or at the request of, respondents at all, but by the sheriff.

Appellent next assigns as error the giving of an instruction to the effect that, if the jury found that the arrest was justified, then the respondents were entitled to use such force as was reasonable and necessary under the circumstances. The instruction was correct and proper under the evidence adduced. *Coles v. McNamara,* 131 Wash. 377, 230 Pac. 430. After appellant was apprehended, he refused to accompany his captors voluntarily. Availing himself of a ready expedient and acting upon his own initiative, Ebley kicked him in the rear. It does not appear that this was done any oftener than was necessary to compel appellant to proceed. But even if the force thus used was excessive, the jury found from the evidence that the extent of the damages resulting from all the excessive force was one hundred dollars. It does not

appear that the verdict was influenced by passion or prejudice.

The appellant next assigns as error the giving of an instruction to the effect that, if respondents did not direct or request the arrest or imprisonment of appellant by the deputy sheriffs, but merely stated the facts to them, leaving it to them to act as they saw fit, then respondents would not be liable for damages resulting from the arrest and imprisonment executed by those officers.

If the arrest was justified, then the imprisonment was likewise justified. If the arrest was not justified, then it was a question for the jury to determine, under the circumstances, whether respondents invited or participated in the act of the deputy sheriffs. *Larson v. Erickson,* 142 Wash. 236, 252 Pac. 922. There was evidence that respondents did nothing more than to detail the facts, over the telephone, to the deputy sheriffs. They did not direct the officers what to do, and were not even present when appellant was taken charge of by the deputy sheriffs. Under such a state of facts, respondents would not be liable for the act of the officers. *Vimont v. S. S. Kresge Co.,* 291 S. W. (Mo. App.) 159.

Appellant next assigns as error the giving of an instruction on the measure and extent of damages. In addition to certain other objections of the kind already disposed of, appellant complains of the use of the words "if any" in connection with the word "damages." His complaint is that the expression "if any" carried a suggestion to the jury that appellant had not been injured at all. The expression is a usual one in instructions on the question of damages. We do not think that the jury was in any way misled by the use of the term, or that the appellant was prejudiced thereby.

■ Appellant finally assigns as error the admission of testimony regarding appellant's visit to the scene of the arrest, five days afterward, and his conduct while there. This evidence was offered to refute the testimony previously given by appellant that he had subsequently visited the place of his arrest for the purpose of driving stakes into the ground so as to mark the course he had taken on the evening of his arrest. The evidence was proper.

This disposes of all of appellant's assignments of error. We do not presume to say affirmatively that the appellant was in the act of committing any crime at the time of his arrest. We only say that there was sufficient evidence to take the case to the jury upon that issue. The jury found against appellant upon the issue, but allowed him damages for the excessive force used by one of the respondents.

We find no error in the record, and the judgment is therefore affirmed.

BEALS, C. J., MILLARD, MAIN, and MITCHELL, JJ., concur.