Maxine Frances COVEY, Administratrix of the Estate of Maude Albaugh, deceased, Appellant-Plaintiff,

v.

Vivian VAN BIBBER, Respondent-Defendant.

No. 22648.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

Gresham, Boughan & Whipple, Kansas City, for appellant.

Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for respondent.

CAVE, Judge.

This is a proceeding commenced in the Probate Court of Jackson County, upon the affidavit of Maxine Frances Covey, Administratrix of the Estate of Maude Albaugh, deceased, against Vivian Van Bibber, under Sections 473.340–473.357 RSMo 1949, V.A.M.S., to discover assets of the deceased. We will refer to the parties as plaintiff and defendant.

Citation was issued and interrogatories and answers thereto were duly filed. These interrogatories and answers constitute the pleadings in the case and settle the issues involved. Tygard v. Falor, 163 Mo. 234, 242–243, 63 S.W. 672. They were introduced in evidence by the plaintiff, without limitation, conditions or restrictions, and were the only evidence produced by the plaintiff. For this reason we shall shortly consider them in detail.

The trial in the probate court resulted in a judgment for defendant, and upon appeal and trial de novo in the circuit court, without a jury, the judgment was for the defendant, and plaintiff has appealed.

The pertinent interrogatories and answers are as follows:

"No. 1. Did you on or about April 26, 1954, receive a sum of two thousand dollars ($2000.00) from the decedent herein in the form of a cashier's check issued by the Southside Bank of Kansas City? A. I did, on July 9, 1954, receive the sum of $2000.00 from decedent herein in the form of a draft or cashier's check on the Southside Bank of Kansas City."

"No. 2. If so, was this sum received for any consideration moving from you? A. This sum was transferred to me by the decedent herein in consideration for personal services which I rendered to decedent."

"No. 4. Did decedent give you any instructions regarding this sum of money? A. On July 9, 1954, and just prior to the time that this sum was received by me from decedent herein and deposited in the Linwood State Bank in my name, said decedent instructed me, in substance, that she was going to open up a bank account with this sum and give it to me to pay my bills; and she further instructed me at that time, in substance, that she wanted me to pay her bills out of the account also, and that the balance left in the account upon her death was to be mine; at numerous times thereafter, decedent instructed me, in substance, that she wanted me to use the money in the aforesaid bank account at any time and manner that I saw fit; the night before she died decedent instructed me that the amount left in her account in the Southside Bank, together with the proceeds of a certain insurance policy, were enough to cover the expenses of her cremation and burial in the manner she desired; the foregoing statements set forth the substance of all instructions given by decedent with regard to the aforesaid money which was deposited in the Linwood State Bank."

"No. 5. If said sum of money was received and deposited as aforesaid, furnish information as to whether the following checks were drawn on said account and to whom and whether they were drawn on your account for the benefit of yourself or the decedent: (Then follows a list of eighteen checks.) A. The following list sets forth all the checks that were drawn on said account in the Linwood State Bank and the dates and amounts of said checks and information as to whose benefit they were drawn for: * * * ". (Then follows the list of checks and for whose benefit, three of which were for defendant's benefit and

all others were for the benefit of decedent or partially for her and for the defendant.)

"No. 6. What disposition did you make of the sum of $1189.30 withdrawn from the aforesaid bank December 4, 1954? A. That sum was withdrawn from the said account by me on December 3, 1954, and is still in my possession."

"No. 7. Did you ever account to the decedent for this sum of money, or any part of it? A. I never reimbursed decedent for any money drawn out of this account for my own benefit and I never was asked by said decedent to make any such reimbursement; at the end of each month I voluntarily submitted the bank statements and cancelled checks to decedent for her inspection and at the times that the cancelled checks were so submitted to decedent, I voluntarily called her attention to those that were drawn for my own benefit; decedent never requested that any bank statement or cancelled checks be explained to her, nor did she ever request any information or explanation about any money drawn from this account."

"No. 8. * * * why is this sum not turned over to this court or administratrix as part of the assets of the estate? A. I have not turned the aforesaid money over to this court or administratrix because said sum is not a part of the assets of the estate of Maude Albaugh, deceased."

Defendant introduced the following oral testimony: Rodney Hill testified that he was a comptroller at the Linwood State Bank; that on July 9, 1954, Vivian Van Bibber deposited in her individual name the amount of $2,000; that she had no other account there; he identified the various checks drawn on this account; and that on December 4, 1954, there remained a balance of $1,189.30, which was withdrawn by check written by defendant Van Bibber, and the account was closed. He stated that Mrs. Albaugh had no account in that bank.

Mrs. DeAtley testified that from June, 1953, until sometime in the summer of 1956, she resided and worked as a desk clerk at the Southside Hotel in Kansas City; that Mrs. Van Bibber had lived at the hotel during that time; that Mrs. Albaugh moved there in September, 1953, and lived there until her death on November 25, 1954; that Mrs. Van Bibber and Mrs. Albaugh were very close friends and had been for a number of years prior to that time; that Mrs. Albaugh frequently had heart attacks; that Mrs. Van Bibber waited upon her and frequently sat up all night to take care of her; that in July, 1954, Mrs. Albaugh was in the lobby of the hotel and during a conversation stated that, "I just went up to the bank and arranged everything, it is all in Vivian's name, and she can do with it what she wants to." She was referring to the Linwood State Bank. She said Mrs. Bertha L. Cameron, manager of the hotel, was present at that time; that Mrs. Albaugh frequently spoke of the good care being given her by Mrs. Van Bibber and "that money was in the bank, she wanted her to have it."

Dorothy Raines testified that she was a shorthand reporter; and that when this case was tried in the probate court she reported that hearing and had correctly transcribed the testimony taken at that time. She identified the transcript of the testimony of Bertha Cameron, who had left the State of Missouri, at the time of the trial in the circuit court. The plaintiff objected to the introduction of this transcript. The objection was overruled and the testimony of Mrs. Cameron was read. She merely stated that she had heard the same statements of Mrs. Albaugh as testified to by other witnesses.

The effect of the findings and judgment of the probate court and the circuit court is that the evidence was insufficient to sustain a gift inter vivos; but was sufficient to sustain a finding that the $2,000 had been conveyed to Mrs. Van Bibber in the nature of a trust.

The plaintiff first contends that the probate court had no jurisdiction to determine the question of whether a trust had been created; and that since the jurisdiction of the circuit court, on appeal from the probate court, is derivative, the circuit court had no jurisdiction to make such a finding. This exact question was decided adversely to plaintiff's contention in In re Geel's Estate, Mo.App., 143 S.W.2d 327, at page 331, wherein the court said: "In this proceeding, originating in the probate court, for the discovery of assets allegedly withheld from the estate in process of administration, Irma seeks to defeat the administratrix' contention by proof that at the death of the deceased she became invested with the absolute legal title to the fund; and it is no objection to the court's jurisdiction that she bases her defense upon the fact of the alleged establishment of a trust through which her original equitable title ripened into a complete legal title upon the death of the deceased." See also Davis v. Rossi, 326 Mo. 911, 34 S.W.2d 8.

Plaintiff cites State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909. In that case, after the interrogatories and answers had been filed, in which the defendant claimed certain property as her own and also claimed that she held a $5,000 bond in trust for a third party, the third party then filed an original proceeding in the circuit court claiming the $5,000 bond, and the court held that that issue should be tried in the circuit court. It also held that a probate court does not have jurisdiction to try a case (122 S.W.2d at page 911), "purely in equity * * *, yet on matters where it has jurisdiction it may do justice by applying equitable principles, 'whatever the nature of the demand, whether equitable.'" See Jones v. Peterson, 335 Mo. 242, 72 S.W.2d 76, 85. Certainly, in the instant case, the probate court had jurisdiction of the subject matter, the discovery of assets, and of the parties, and could determine whether defendant's "original equitable title ripened into a complete legal title upon the death of" Mrs. Albaugh. We hold

that the probate court and the circuit court had jurisdiction of the cause.

Plaintiff next contends that there is no substantial evidence to support a finding of a gift inter vivos or to create a trust. As stated, the probate court and the circuit court found that the evidence was insufficient to support a gift inter vivos, and with that we agree. There was no complete and unconditional surrender of control of the bank account by Mrs. Albaugh.

This leaves the question whether there is substantial evidence to support a finding that a trust was created. Plaintiff's principal argument that the evidence is insufficient to sustain such a finding is based on her contention that the answers to the interrogatories cannot be considered as evidence. No doubt that would be true if they had not been introduced by the plaintiff, without limitation, condition or restriction, as a part of her case. Tygard v. Falor, supra; and Carmody v. Carmody, 266 Mo. 556, 181 S.W. 1148. However, under the state of this record, we are of the opinion that the answers to the interrogatories may be considered as evidence.

A proceeding of this kind is statutory, and when interrogatories are submitted, the defendant must answer the same or the court may commit him to jail until he does answer or "is discharged in due course of law". Section 473.347. In other words, the answers are not a voluntary pleading, but a compulsory one, and we believe that when the plaintiff offers in evidence all of the answers without limitations, she cannot insist that the favorable answers be considered and the unfavorable ones disregarded. We are cited to no Missouri decisions, and we find none, directly deciding this issue, but the Supreme Court of the State of Oregon discusses the specific question and reviews authorities from other states, all of which support our conclusion. See Beck v. General Insurance Co., 141 Or. 446, 18 P.2d 579.

Plaintiff cites Tygard v. Falor, supra, and Lammers v. Greulich, Mo., 262 S.W.2d

861, 864. We have considered those cases and they do not discuss and decide the specific question before us. All that is held in the Tygard case is that the interrogatories and answers constitute the pleadings in the case, and that the filing of the interrogatories does not waive the incompetency of the defendant. In the Lammers case, the court merely stated the well recognized rule that " * * * admissions in pleadings cannot be regarded as evidence unless the pleadings are introduced on the trial at the proper time and in the proper way." That was done in this case by the plaintiff herself.

 We return to the question of whether the evidence is sufficient to support the judgment. Plaintiff cites cases announcing the general rule that the evidence must be clear and cogent to establish a trust. That is a well recognized general rule, but it is also true that the intent of the person seeking to create a trust, as gathered from all the evidence, is of utmost importance. Each case must be decided on its own facts and circumstances.

In the instant case it is clear that Mrs. Albaugh and Mrs. Van Bibber were close friends; that Mrs. Van Bibber rendered valuable services to Mrs. Albaugh during her illness; that Mrs. Albaugh drew $2,000 from her bank account at her own bank and delivered it to Mrs. Van Bibber; that she desired and expected Mrs. Van Bibber to use some of the money in support of Mrs. Albaugh; that most of the checks that Mrs. Van Bibber had drawn on the account were for the benefit of Mrs. Albaugh; and that she intended that Mrs. Van Bibber should have whatever balance was left in the account at Mrs. Albaugh's death.

The basic facts in this case are substantially the same as the facts in Harris Banking Co. v. Miller, 190 Mo. 640, 89 S.W. 629, 1 L.R.A.,N.S., 790. In that case, the court wrote a long and scholarly opinion and discussed the distinction of a gift inter vivos and the creation of a trust, and held that the evidence in that case did not amount to a gift, but did create a trust. It would serve no useful purpose to quote at length from that opinion, but we still use one paragraph which the court quoted from an earlier decision, In re Estate of Soulard, 141 Mo. 642, 43 S.W. 617. That quotation is as follows (190 Mo. at page 667, 89 S.W. at page 636) : "As has been said, the transaction in question does not amount to a perfect gift. That is evident from the terms of the settlements themselves. Yet it is evident, also, that the donor intended to make a complete disposition of the property, by which the income should be paid to himself during life, the proceeds of the notes, when paid, should be reinvested under his direction, the beneficiaries should have no power to dispose of the principal during his life, but at his death they should have the principal fund absolutely, whether then in bonds, notes, or money. We must assume that the donor intended to do what these settlements show he attempted to do. If the settlements, together with what was done under them, amounted to a valid executed trust, then they should be carried out in favor of the beneficiaries."

 The evidence in the instant case is much stronger, because Mrs. Albaugh retained no control over the bank account, except that she intended and expected that some of it be used to pay her expenses. We are of the opinion that the evidence is sufficient to support the judgment herein. As was said in In re Geel's Estate, supra [143 S.W.2d 331], Mrs. Van Bibber's "original equitable title ripened into a complete legal title upon the death of the deceased," Mrs. Albaugh.

 Plaintiff next contends that the court erred in admitting in evidence the transcribed testimony of Mrs. Cameron given in the probate court, for the reason that it was not taken and transcribed by an official court reporter and was not a part of the record of the probate court. It is unnecessary to decide whether such testimony should have been admitted be-

cause it is clearly cumulative; a recital of the same statements as testified to by other witnesses; and was not contradictory or inconsistent with any other evidence in the case; and was not prejudicial, even if improperly admitted. Kivett v. Stanley, Mo.App., 305 S.W.2d 739, 742.

 It is also contended that the court erred in not requiring the defendant to elect, at the beginning of the trial, whether she would proceed on the theory of a gift inter vivos or a trust. There is no merit in this contention. The same procedure was followed in In re Geel's Estate, supra, and Harris Banking Co. v. Miller, supra.

Finding no reversible error, the judgment is affirmed.

All concur.