**Kenneth BOND, Appellant,**

v.

**WABASH RAILROAD COMPANY,**
a Corporation, Respondent.

No. 49030.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Marvin G. Marshall and Sherman Landau, St. Louis, for appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, Alphonso H. Voorhees, St. Louis, for respondent.

HOUSER, Commissioner.

Action in two counts for false imprisonment and malicious prosecution. Plaintiff prayed for $25,000 actual and $25,000 punitive damages in each count. This is the fourth of a series of suits of this nature reaching appellate courts, filed by various boys against Wabash Railroad, Claude I. Gabbert and John E. Murphy. See Barnard v. Wabash R. Co., 8 Cir., 208 F.2d 489; Frank v. Wabash R. Co., Mo.Sup., 295 S.W. 2d 16; Manson v. Wabash R. Co., Mo.Sup., 338 S.W.2d 54. Following the suggestion of the deaths of the individual defendants the case proceeded to trial against the cor-

porate defendant, resulting in a directed verdict for the railroad on the count for malicious prosecution and a jury verdict for the railroad on the count for false imprisonment. Plaintiff appealed from the ensuing judgment for defendant.

On May 30, 1951, after swimming at Forest Park Highlands in St. Louis and after watching a game at the baseball diamond, plaintiff and three other boys started walking home across Forest Park. Their route took them across the private right of way of the railroad, which maintained a double set of tracks through a 15–20 foot cut which runs across the northeast portion of the park. A footbridge was erected over the tracks for pedestrian traffic. Plaintiff was familiar with the park and knew the footbridge was meant for people to walk on. Instead of traveling over the footbridge provided for the purpose of crossing over the railroad right of way, or traveling over Kingshighway, which runs above the railroad right of way, plaintiff and the three boys walked onto the railroad right of way, down the embankment to the railroad tracks, and across the tracks. John Murphy and Claude Gabbert, special agents for the railroad, licensed as private watchmen, were standing on a footbridge in Forest Park some 385 feet distant from the point where the boys crossed the right of way. The boys were in full view of the special agents. The boys crossed the railroad property and got halfway up the embankment on the other side of the tracks when they observed a train approaching. As the train got to a point opposite where the boys were standing, plaintiff and the other boys all commenced throwing rocks at the train, and continued to do so until the train had passed. The boys then walked from the right of way into the park area. Murphy and Gabbert proceeded after the boys and arrested them at a point 400 feet or more from the railroad right of way. Murphy did not say anything to the boys about trespassing at the time he arrested them. He asked them why they had thrown stones, and all four admitted having thrown

**4**

the stones. The special agents took the boys to a police station and informed the officer at the desk, Desk Corporal O'Day, what had occurred; that they were juveniles and that they were charged with trespassing. O'Day told Murphy to make a report to the juvenile officer and turn the children over to their parents, with instructions to return the next day. Plaintiff was detained 40 or 45 minutes while waiting for his parents. ,When the boys returned the next day the juvenile officer talked to them and to their parents and explained the dangers of playing on and around railroad property and of throwing rocks at the trains.

Plaintiff and his companions testified that they crossed the tracks and right of way of the defendant, but denied that either plaintiff or any of them threw rocks at the train. They claimed to have simply waved at the passing train, and denied having admitted that they threw rocks at the train.

At the time in question there was in force and effect Section 79, Chap. 46, Revised Code of the City of St. Louis (1948), which makes it unlawful for any person without lawful authority, or without the express or implied consent of the owner, to enter any improved real estate, lot or parcel of ground in the city. Persons violating the ordinance are deemed guilty of a misdemeanor.

Plaintiff's appeal raises ten points, which we have grouped into six separate headings.

■ *Comments by the court.* Defendant placed Mr. Curran, a juvenile officer on the stand. On cross-examination plaintiff's counsel asked a hypothetical question as to the effect on plaintiff's mental well being of having to reveal the arrest in question in answering questions in applications for employment and in entering the navy. The question assumed that plaintiff did not in fact throw any rocks at the train. In sustaining defendant's objection to the question the court commented, "It assumes he didn't do it, and the testimony here is that he admitted he did do it." (As indicated, plaintiff

and his witnesses had testified negatively, while defendant's witnesses had testified positively, as to the rock throwing.) The court's comment inferentially ignored plaintiff's testimony and was improper, as the court immediately recognized when, upon objection by plaintiff's counsel the court sustained the objection, and upon request by plaintiff's counsel that the remarks be stricken and the jury instructed to disregard, the court said "Ladies and Gentlemen of the jury, Mr. Marshall made an objection to the remarks I made, and just don't take them into consideration when you bring in your verdict." Plaintiff asked for no other or further relief. We cannot say that the effect of the improper remark was not dissipated by the prompt corrective action taken by the court.

■ In his brief on appeal plaintiff further objects to the court's comment that Mr. Curran was "one of the good" juvenile officers attached to the juvenile court, but that question was not preserved for appellate review in plaintiff's motion for new trial. Sup.Ct. Rule 83.13(a), V.A.M.R.

*Admission of evidence.* Defendant's watchman Murphy made a written report to defendant, Exhibit J, stating: "These boys were observed by Lt. Gabbert and myself to throw rocks at Wabash train No. 9 proceeding west." Plaintiff objects that J was hearsay, self-serving and incompetent; that Murphy was possessed of a motive to misrepresent. The fact that these boys threw rocks at Wabash Train No. 9 was testified to by Murphy and Gabbert. J introduced no new fact into the case; did not relate to any facts which were not established by other competent testimony; was cumulative merely, and therefore not prejudicial, Kelly v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 315 S.W.2d 699, 703 [3]; Covey v. Van Bibber, Mo. App., 311 S.W.2d 112, 116–117; Oglesby v. St. Louis Public Service Co., Mo.App., 338 S.W.2d 357, 364, even if improperly admitted, a question not necessary to be decided.

Other employees made written hearsay reports of other incidents which occurred over a period of more than a year preceding the time in question, involving the throwing of rocks, stones, bricks, etc. at train windows, one of which injured a passenger named Salvador Zepeda; and the shooting of BB guns against car windows, breaking them. The objection is that the reports were not firsthand but were hearsay upon hearsay, and as such inadmissible. The reports were introduced not as evidence of the truth of the facts asserted therein, but to show the reason why defendant's employees were "on their guard," as the trial court expressed it, and as evidence of the "good faith" in which defendant was acting in arresting this plaintiff. The hearsay rule has no application where the extrajudicial utterance or writing is offered " 'not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted  *  *.' " Wigmore on Evidence, § 1766, quoted in Mash v. Missouri Pac. R. Co., Mo.Sup., 341 S.W.2d 822, 827. And as stated by the federal court of appeals in Barnard v. Wabash Railroad Co., supra, 208 F.2d, l. c. 496, this evidence was not prejudicial because "evidence tending to show defendant's motive and purpose in doing the acts alleged is admissible in mitigation of damages." Plaintiff had prayed for punitive damages, and evidence of frequent reports of depredations of a similar character occurring along this section of tracks was material to show that Murphy and the other watchman acted reasonably and without malice in making the arrest in question.

The admission of the trespass ordinance is contested on four grounds. First, plaintiff says that under the juvenile laws this 12-year-old boy was not subject to a charge of committing a crime. The ordinance was admitted in this civil action, not for the purpose of determining whether plaintiff was guilty of a "crime," but whether there was probable cause for his arrest. Barnard v. Wabash R. Co., supra, 208 F. 2d, l. c. 495. Second, plaintiff maintains

that the ordinance was invalid because not in harmony with the state law on the subject. The ordinance has not been declared invalid, so far as we are informed, and had not been so declared at the time of the arrest. In such case we need not rule on the validity of the ordinance because the watchman had the right to rely upon its validity until such time as it might be declared invalid. Manson v. Wabash R. Co., supra, 338 S.W.2d, l. c. 59. Third and fourth, plaintiff claims that defendant did not plead that it arrested plaintiff for trespassing, and that the trespass was not asserted as a ground for the arrest at the time plaintiff was arrested. Paragraphs 11–17, both inclusive, of the answer relate to trespassers on the railroad right of way endangering the safety of passengers and interfering with trains; charge plaintiff with being a trespasser; charge plaintiff with having thrown stones, sticks and missiles at a Wabash train at that place, thus interfering with the safe operation of the train, the safety of passengers and employees, and endangering himself; relate to the duty of the railroad to protect passengers and employees from exposure to danger from "acts of trespass in throwing stones, sticks or other missiles against trains  *  *  *, and from the necessity of bringing its said train to emergency stops in order to avoid striking said trespassers," and the duty "to keep trespassers off of said right-of-way and to remove them therefrom." The trespass ordinance is pleaded. The answer alleges the authority of the watchmen to guard, watch and protect the right of way to assure free and safe passage of Wabash trains, passengers and employees against all dangers arising, or which might arise from trespassing upon said right of way and interfering with free passage of trains, and that at said time and place plaintiff and others were discovered by one of the watchmen in the act of throwing stones, sticks and rocks at a passing Wabash train. The intent of the answer to allege the violation of the trespass ordinance as one of the reasons for plaintiff's arrest and as one of the

defenses in the lawsuit is manifest. Indulging every reasonable intendment in favor of the pleading, and giving it the liberal construction to which it is entitled, Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, and cases cited 603, 604 [2], [3], we infer that the answer sufficiently alleged that plaintiff's trespass was a cause of his arrest. It was not necessary for the special agents to advise plaintiff of the offense for which he was being arrested, since he was apprehended upon fresh pursuit, immediately after the commission of the act. Smith v. Drew, 175 Wash. 11, 26 P.2d 1040.

■ *Exclusion of evidence.* The report of the injury to the passenger Salvador Zepeda indicated that the injury to his eyes resulted from someone throwing a rock through the coach window. Plaintiff complains of the rejection of a hospital record which showed that the injury occurred when a piece of coal fell from a passing train, striking and shattering the glass. Plaintiff contends that defendant's report was introduced to convince the jury that on many occasions in the past stones had been thrown at trains by boys. "and to thereby convey added weight to defendant's evidence that plaintiff had thrown stones * * at the time in issue"; that the hospital record was admissible as rebuttal evidence. Plaintiff is mistaken as to the purpose of offering the Zepeda and other reports which, as we have seen, were offered and received not to evidence the matter asserted therein but to account for the state of mind of Murphy and his fellow watchman. Whether in fact the window was broken by a rock thrown by a boy or a piece of coal falling from a passing train was not the issue. Plaintiff's offered evidence in rebuttal on that question was not relevant or material.

Complaint is made that the court excluded evidence offered by plaintiff wherein watchman Murphy impeached himself by confessing that he had falsified under oath (by stating that he held a master's and doctor of laws degree when in fact he did not) when he applied for a license as a private watchman. The record does not show that this evidence was excluded. On the contrary, the record shows that the testimony of Murphy admitting that he did not hold these degrees when he signed a sworn application stating that he did, was read to the jury and that plaintiff had the full benefit of this impeachment.

■ After defendant rested plaintiff offered that portion of the transcript in the previous trial of Frank v. Wabash R. Co., supra, in which watchman Murphy testified that he talked to the group of boys arrested in that case, and told them "about the engineer having a heart attack," thinking it would impress them, and make them more careful in their conduct around the railroad in the future. When asked if he thought children ought to be instructed by lying to them he answered, "If it is effective, I think it might work." Plaintiff offered this in order to impeach the testimony of watchman Murphy which had been read to the jury from the transcript in the case of Valentine v. Wabash R. Co., a case tried in a federal district court. The extent to which the trial court should go in the admission of specific collateral matters tending to disparage and discredit the testimony of a witness is a matter within the sound discretion of the trial court. Willis v. Wabash R. Co., Mo.Sup., 284 S.W.2d 503, 512; Arnold v. Alton R. Co., 348 Mo. 516, 154 S.W.2d 58, 60. The court did not abuse its discretion in excluding this particular matter. The Valentine transcript, read to the jury, contained 27 pages of examination by plaintiff's counsel, in the course of which Murphy was subjected to searching examination with reference to many matters tending to discredit him, including the inconsistency between his testimony in chief and by deposition concerning the badge he exhibited to the boys at the time of arrest; the fact that he had a badge inscribed "Wabash Railroad" with the word "Chief" underneath, although the railroad had never furnished him with a badge; whether he told some boys arrested on another occasion that Ze-

peda had lost the sight of one eye and was to lose the sight of the other; whether he stated to their parents that there were international complications and an exchange of diplomatic notes between the United States and Mexico arising out of the Zepeda case (Zepeda was a Mexican national) and that Zepeda had a claim for $50,000 pending against Wabash, after Zepeda's claim had been settled for $50; the fact that he and his deputy arrested 150 or so children during that four months' time; the contents of his application for a commission as a licensed watchman, including whether he had ever been arrested, traffic violations, the extent of his education, and the fact that Murphy had indicated that he held a master of arts degree and a degree of doctor of laws, whereas in fact he did not hold these degrees; whether he flunked out of Washington University, etc. While it would have been entirely proper for the trial court to have permitted the reading of the one additional item offered in impeachment, we find no abuse of discretion in excluding it, in view of the fact that the court permitted the reading of the Valentine transcript in which Murphy's accuracy, veracity, credit and character were put to an extensive test.

■ *Refusal to discharge the jury.* On cross-examination Ronald Valentine, one of plaintiff's companions, testified that he had a lawsuit against Wabash, which was tried in federal court about eight years ago, arising out of the same incident which was the basis of plaintiff's action. Then counsel for defendant asked this question: "Will you tell me what the results of that suit was?" Plaintiff's objection was sustained on the ground that it was irrelevant and immaterial. Plaintiff then asked that a mistrial be declared. Out of the hearing of the jury defendant made an offer of proof that there was a jury verdict in favor of the railroad, and that plaintiff recovered nothing in his suit, to show bias on the part of the witness, on the theory that the fact that the witness got nothing would make him "more biased." The court refused the offer of proof on the ground that it would not be binding on this jury; and that it was not shown that the identical testimony was introduced before the other jury. Plaintiff now contends that the mere propounding of the question informed the jury that the verdict in Ronald's suit was favorable to the railroad company, notwithstanding the question was not answered, and that plaintiff was prejudiced thereby. The question is not the effect on the verdict if Valentine had been permitted to answer that the jury brought in a verdict against him and in favor of the railroad. The court did not permit Valentine to answer the question. The question for decision is the limited question whether the mere asking of the question constituted reversible error. Conceivably a question might be so framed and weighted on a subject so sensitive and influential that the question itself would inevitably convey improper information to a jury and thereby render a trial unfair, but this is not such a question. No particular inference was forced or suggested by the inquiry. If the jury engaged in surmise as to what answer counsel was seeking to elicit it might as well have speculated that Valentine won his suit as that he lost it. If the jury guessed that he won, it still would have been uninformed whether he won substantial damages or nominal damages only. The question as asked gave no hint of plaintiff's success or failure, or the extent of his success or failure. The question as asked gave the jury no basis for speculation as to whether the plaintiff voluntarily dismissed at the close of the evidence; whether the court dismissed the case before submission to the jury, or whether there was a hung jury. The form of the question was not leading and suggestive. There were too many possibilities and unknowns for the mere propounding of the question to require a reversal of this judgment. The trial judge, who had the best opportunity to appraise the effect of the asking of this question, did not regard it as prejudicial, either at the time the point was raised at the trial, or when the point came before him for reconsideration on motion for new trial. On this review we find no merit in the point.

*The giving of instructions.* Instruction No. 11 instructed upon the contents of the trespass ordinance; required a finding that defendant had the right to the exclusive control of the right of way; that it was improved real estate; that plaintiff entered the right of way without authority, or express or implied consent; that plaintiff was guilty of violating the ordinance; that Murphy and Gabbert had the same authority to arrest as a member of the city police force; that plaintiff entered the right of way in the presence of the watchmen, or that they had reasonable cause to believe that plaintiff had so entered. Upon finding these facts the jury was instructed that the watchmen had authority to take plaintiff into custody and detain him and that there was no false arrest. Plaintiff says No. 11 was prejudicially erroneous for the following reasons: First, that trespass was not pleaded as a ground for the arrest. We have determined to the contrary, for the reasons previously given. Second, that there was no evidence that violation of the ordinance was a ground for the arrest. Sufficient evidence of this fact is the testimony of the desk corporal, O'Day, that when the special agent (Murphy) brought the boys into the station he was told that "they were juveniles and they were charged with trespassing." Third and fourth, that there was no evidence, and no requirement of a finding, that this 12-year-old boy had "criminal capacity." In order to justify an arrest for a violation of a city ordinance it is not necessary that the offender be proved or found to have had criminal capacity, or to have been of age. A child may be *arrested* if he violates a city ordinance in the presence of an officer, notwithstanding he may not be amenable to the procedures applicable to adults. Infancy provides no immunity from arrest. 4 Am.Jur.Arrest § 93, p. 64. Fifth, that the instruction erroneously instructed the jury that the watchmen had the same authority as a police officer, and therefore conflicted with Instruction No. 3, which instructed that the authority of a private watchman was restricted to an area in and around the property of the railroad and its right of way. Plaintiff contends that plaintiff was not "in and around the private property of the Wabash Railroad" when at a point more than 400 feet off the right of way. A Wabash private watchman is "authorized to make an arrest, in the locations and during the time specified in his license, under the same circumstances as would a member of the police force of the City of St. Louis." Frank v. Wabash R. Co., supra, 295 S.W.2d, 1. c. 21. Murphy had authority "in and around the property of the Wabash Railroad Company." Whether an arrest some 400 feet off the right of way was an arrest "around the property" of the railroad was a jury question. By Instruction No. 3 the jury was permitted to determine whether an arrest more than 400 feet from the right of way constituted an arrest "in and around the defendant's property or right-of-way" and, if not, the jury was instructed to return a verdict for plaintiff. We cannot say as a matter of law that the jury could not so find. We note in passing that the secretary of the board of police commissioners testified without objection that the board construed the power and duties of watchmen under this license to include the railroad right of way, additional lands, and to extend "half, even a mile." There was no conflict between Instructions Nos. 11 and 3, as charged.

Instruction No. 13 told the jury that the watchmen's power of arrest was not confined solely to the property of the railroad; that it authorized them on seeing the commission of an act on Wabash property entitling them to arrest, to pursue the person and arrest him even though the arrest may take place off of Wabash property. Plaintiff says No. 13 was prejudicially erroneous because it improperly extends the area of authority beyond that granted by the license and beyond the area heretofore determined in the Frank opinion, supra. The statement in the Frank case was written under the evidence in that case, which showed that the arrest was made

when the boys climbed the embankment forming the slanting side of the excavation for the tracks. Here the arrest was made 400 or more feet away from the right of way. Instruction No. 3, authorizing arrest "off the property" under the specified conditions, is not inconsistent with the power to arrest "around the property" of Wabash, under the language of the license, its construction by the issuing authority, and the facts in this case.

*Refusal of instruction.* The court refused to give Instruction No. 15, requested by plaintiff. Plaintiff says the refusal of No. 15 constituted reversible error because it properly declared the law respecting "the burden of going forward with the evidence." Given Instruction No. 9 follows: "You are instructed that the law places the burden of proof on the plaintiff. This means that the plaintiff must prove by the greater weight of the evidence that defendant falsely arrested and imprisoned him and that he was damaged; and unless you find that the greater weight of the credible evidence is in his favor, he has not sustained his burden of proof, and your verdict shall be in favor of defendant." Refused Instruction No. 15 cast the burden upon defendant to show a legal justification of the arrest if plaintiff was arrested without a warrant. Instruction No. 9 and refused Instruction No. 15 are the same in substance as Instruction No. 5 and refused instructions R and W in Frank v. Wabash R. Co., 295 S.W.2d, 1. c. 22. For the same reasons given in that case we hold that Instruction No. 9 properly declared the burden of proof in this case, and that the refusal of Instruction No. 15 was proper.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.