Omer E. WILLIS, Respondent,

v.

WABASH RAILROAD COMPANY, a Corporation, Appellant.

No. 44638.

Supreme Court of Missouri.

Division No. 1.

Nov. 14, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 12, 1955.

506

Wayne Ely, Robert C. Ely, Alphonso H. Voorhees, St. Louis, for appellant.

Hullverson & Richardson, St. Louis, for respondent.

COIL, Commissioner.

Omer E. Willis, a railroad fireman, and plaintiff below, had a verdict for $30,000 in his action under the F.E.L.A., 45 U.S. C.A. § 51 et seq., for damages for alleged personal injuries sustained when he fell from the catwalk of a diesel engine. Wabash Railroad Company, defendant below, has appealed from the judgment for $22,-000 entered after an $8,000 remittitur. Wabash contends that the trial court erred: in failing to direct a defendant's verdict; in giving and refusing instructions; and in restricting defendant's, and in failing to restrict plaintiff's, cross-examination. Defendant also contends that the judgment is excessive.

Plaintiff's verdict-directing instructions (3 and 4) hypothesized respectively: defendant's negligence in violating its rule 30 requiring the engine's bell to be rung when the engine was about to move; and defendant's engineer's negligence in moving the engine when he knew or should have known that plaintiff was on the engine's catwalk for the purpose of urinating.

█ In our determination of whether plaintiff made a submissible case in the respects above noted, we review the evidence from a standpoint favorable to plaintiff, give him the benefit of defendant's evidence favorable to him and not contrary to his own testimony or to his fundamental evidentiary theory, give him the benefit of all reasonable inferences, and disregard defendant's evidence unfavorable to plaintiff. The evidence so viewed justifies this statement.

During the afternoon and evening of February 16, 1953, plaintiff was the fireman, and J. R. Foster the engineer, in defendant's crew operating diesel 407 engaged in switching movements in defendant's Kansas City yards. Plaintiff and Foster had worked together on only one prior occasion. Shortly prior to 8:30 p. m. on that cold night (temperature 10° above zero), defendant's 43-car freight train (Moberly to Kansas City) arrived in the yards. Its road engine was cut off and engine 407 coupled on (headed east into the west end of the train's westernmost car). Thereafter, the train remained stationary for 15 or 20 minutes, during which time the air was "bled off the brake drums" of the freight cars preparatory to the train's movement west to another section of the yards. During this interval, plaintiff sat in the fireman's seat on the engine cab's left side for a few minutes, then went out the engine cab's rear door, checked two lanterns (lit one and cleaned the other), returned to the cab and said to the engineer, "I have to go out and take a leak," to which Foster replied, "Okay, Earl"; whereupon plaintiff went through the door (on the fireman's side) which led to a "running board" or "catwalk", a platform 15 to 18 inches wide and about 4 feet above the ground. About 4 or 5 feet above the "catwalk" was a grab iron to which one could hold. Plaintiff, facing north, began to unbutton his trousers, when the train, without warning by bell or otherwise, backed westwardly, throwing plaintiff to the ground. If plaintiff had known that the engine was about to move, he would have held to the grab iron and thereby would have avoided falling to the ground. Most enginemen go to a diesel's rear steps for the purpose, but they may urinate from the "catwalk" so long as they are not in public view.

Defendant's transportation department rule 30 was: "The engine bell must be rung when an engine is about to move and while approaching and passing public crossings at grade." Plaintiff testified that this rule applied and was customarily observed by defendant's engineers when a switch engine was "about to move" after having been stationary under the circumstances shown in evidence. Most of defendant's evidence was to the contrary as to the custom and practice and usual interpretation of the rule, but some of defendant's witnesses testified in such manner that the jury reasonably could have found that their testimony corroborated plaintiff. Plaintiff also testified that the "only way I know an engine is going to move is when the bell rings".

There was also evidence that an engineer customarily would not move an engine until the fireman was in position in the cab or until he knew where the fireman was. Defendant's engineer's testimony, construed favorably from plaintiff's standpoint, was that he did not in fact know where the fireman was at the time he moved the engine but that he thought that plaintiff had left the engine, had walked 1,600 feet west to use a toilet in the yard office, and that plaintiff would be waiting there to reboard the engine.

Plaintiff's instructions 3 and 4 in pertinent part were:

"Instruction No. 3. * * * You are now instructed that if you find from the evidence that on the occasion and at the time and place mentioned in evidence Mr. Willis left the cab of the locomotive and stepped out upon the running board on the north side of the locomotive to answer a call of nature, and that while so doing the engineer moved the locomotive to the west without notice or warning to Mr. Willis, causing him to fall and be injured, and

"If you further find from the evidence that at that time and place there was in full force and effect a rule of the defendant requiring the engineer to ring the bell before moving the locomotive under the circumstances aforesaid, and at such time and

place, and that such rule was applicable to the movement made by the engineer at that time and place, and that the bell was not rung and that in so failing to cause the bell to be rung the defendant failed to exercise ordinary care for the safety of Mr. Willis and was negligent, and that such negligence on the part of the defendant directly contributed either in whole or in part to bring about injury to plaintiff, then you are instructed that Mr. Willis is entitled to recover and your verdict should be in his favor.

"Instruction No. 4. Gentlemen of the jury, you are also instructed that if you find from the evidence that on the occasion mentioned in evidence there was a custom and practice of the defendant, if you so find, forbidding the engineer from starting or moving a locomotive until the fireman was in his position in the cab or until the engineer knew that the fireman was in a place of reasonable safety, and that on this occasion the engineer moved the locomotive before Mr. Willis had resumed his position in the cab, and before the engineer knew where Mr. Willis was, and

"If you also find from the evidence that Mr. Willis had left the cab of the locomotive and had stepped out upon the running board to answer a call of nature, and that he had so informed the engineer before leaving the cab of the locomotive, and that in causing the locomotive to be moved under the circumstances aforesaid the defendant railroad company failed to exercise ordinary care for the safety of Mr. Willis and was negligent, and that such negligence on the part of the defendant directly contributed either in whole or in part to bring about injury to plaintiff, then you are instructed that Mr. Willis is entitled to recover, and your verdict should be in his favor."

We think it is apparent from the evidence heretofore reviewed that there was substantial evidence to support each fact hypothesized in each of the foregoing instructions. Defendant does not argue to the contrary except to contend that there

was no evidence of a custom that the engineer was to know that the fireman was in a place of reasonable safety before moving the engine, and that there was no evidence that defendant's engineer knew that plaintiff had proceeded to the catwalk for his stated purpose.

Suffice to say as to those evidentiary contentions that defendant's engineer testified to the effect that it was part of the engineer's job to see that the fireman was at his post, and another defendant's witness testified that it was the custom and practice for an engineer not to continue engine movements until he knows where his fireman is. The jury reasonably could find from that testimony that the engineer was not to move the engine unless and until he knew his fireman was in a reasonably safe place. There also was evidence from which the jury reasonably could find that the engineer knew or should have known that plaintiff was on the catwalk for the accomplishment of his stated purpose at the time the engine was moved. We have noted heretofore that plaintiff and engineer Foster had worked together only once before. Foster, therefore, could not well rely upon what plaintiff "usually did," and there was no evidence that Foster otherwise had knowledge of plaintiff's habits. We have noted also that enginemen, including plaintiff, could, in so far as any rule, custom, or practice was concerned, stand on the engine's back steps or catwalk for plaintiff's purpose; that plaintiff told Foster when and why he was leaving the cab and then proceeded out a door which led to the catwalk rather than through the rear door which led more directly to the rear steps; that it was a very cold night; and that the closest toilet was 1,600 feet away. From all the foregoing, it was a reasonable inference that Foster should have known, his thoughts to the contrary notwithstanding, that plaintiff would not leave the catwalk of the engine.

The real burden of defendant's argument to support his contention that no submissible case was made, is that the evidence showed that the purpose of rule 30 "was to warn men on the ground near the train and not men on the engine," and that the purpose of any custom with reference to the fireman being at his post was to assist the engineer in the "operation of the train and not for the safety of the fireman." Therefore, says defendant, "any violation of the Rule or of the custom was not actionable negligence in this case, because plaintiff does not fall within the class of people for whose safety the Rule or custom was promulgated" and cases are cited in support of the rule that actionable negligence involves the violation of a duty owed to claimant.

Defendant's contention is based in part upon its construction of an answer plaintiff gave on cross-examination. Defendant's counsel asked who was signaled by ringing the bell and plaintiff answered: "Well, there might be a car man around there or behind the engine or something and run over them. We never know who is around the railroad track." Defendant says that testimony, plus defendant's evidence that the bell is never rung in yard switching except to warn persons on the ground, conclusively demonstrates that plaintiff was not within the class for whose benefit the rule was promulgated. We cannot agree. Plaintiff's answer, reasonably construed from a standpoint favorable to plaintiff, was no more than a general statement of his idea of one of the reasons for ringing a bell before moving an engine. And defendant's evidence that the bell was not rung in switching operations except to warn someone on the ground was, as noted, contrary to plaintiff's testimony that the bell was customarily rung in switching operations before moving an engine under circumstances similar to those shown in evidence. So that, even if we assume that the testimony of various persons' ideas as to the reason for and the purpose of a rule was properly considered, still such evidence was not, in view of the rule itself, conclusive on the proposition that the rule was not promulgated for the protection of one in plaintiff's position on the engine.

■ Rule 30 was clear and unambiguous. The first portion of it unmistakably stated that "The engine bell must be rung when an engine is about to move * * *." No qualifying language was inserted. No language appeared in the rule which limited the class of persons who were to be within its protection. The language of the rule does not make it apparent nor does it imply that the rule would not protect plaintiff while he was on the engine. It is not contended by defendant that plaintiff, by custom or otherwise, waived defendant's compliance with the rule. The reasonable construction of the rule is that it was for the purpose of giving notice to any employee, wherever he might be, that the involved engine was about to move. And plaintiff, contrary to defendant's contention, testified, in effect, that he did rely upon defendant's observance of the rule. The jury reasonably could have so found from plaintiff's testimony that the only way he knew an engine was about to move was to hear the bell ring and that if the engine's bell had been rung on the instant occasion when the engine was about to move, he would have held to a grab iron and would have thereby avoided injury.

Defendant's similar contention, that the purpose of the custom for the engineer to see to it that the fireman was in his seat prior to moving the engine was not for the safety of the fireman but rather to enable the fireman to assist in the operation of the train, overlooks the fact that the manner in which that custom was hypothesized in instruction 4 did not authorize a recovery solely because the train was moved in violation of that custom. Indeed, the custom as to the presence of the fireman in the cab is qualified by the alternative, "or until the engineer knew that the fireman was in a place of reasonable safety", so that, all the instruction effectively told the jury was that if it found that the engine was moved when the fireman was not at his post and when he was not in some other place of reasonable safety, and when defendant's engineer knew the purpose for which plaintiff had left the engine cab and had proceeded to the catwalk, then the jury could find that to move the engine under all those circumstances was a failure to exercise ordinary care for plaintiff's safety. And what we have said concerning plaintiff's being within the protection of the rule applies also to his being within the scope of the custom as to not moving the engine until the engineer knew that the fireman was in a place of reasonable safety. Thus, even if we assume, as defendant contends, that the custom of not moving an engine until a fireman is at his post, is, abstractly and standing alone, not a custom indulged primarily for plaintiff's safety, still instruction 4 did not authorize plaintiff's recovery because of a violation of that custom.

■ We are of the opinion that plaintiff made a case for the jury upon the negligence hypothesized in both instructions 3 and 4. That conclusion, of course, means that we hold that the jury reasonably could find that defendant's negligence hypothesized in both instructions proximately contributed in whole or in part to cause plaintiff's injury. That holding, therefore, disposes of defendant's further contention that plaintiff's negligence was the sole cause of his injury. This, because plaintiff's negligence, if any, under our conclusion above, was contributory negligence and not a defense in an action under the Federal Employers' Liability Act.

Our holding that plaintiff was within the protective scope of rule 30 also disposes of defendant's only attack on instruction 3.

■ Defendant contends that instruction 4 was erroneous in five respects. We have heretofore ruled adversely to defendant two of its five assigned reasons by our holding on the question of submissibility. Of the remaining three, defendant first contends that there was no pleading or proof that plaintiff relied upon the custom or practice hypothesized in instruction 4. We have heretofore discussed instruction 4 and there pointed out that the custom and practice, hypothesized as a circumstance in the instruction, was that the engineer would not move the engine until the fireman was at his cab position or un-

til the engineer knew that the fireman was in some other position of reasonable safety. We have also noted that this custom was hypothesized conjunctively with the submitted requirement that the engineer moved the engine when he knew or should have known that plaintiff had, for his stated purpose, proceeded to the engine's running board. Under the circumstances, it does not appear that plaintiff's reliance on the custom was a necessary prerequisite to his recovery under the instruction considered as a whole. But if it was, then, in the first place, we think there was evidence from which the jury reasonably could find that plaintiff did rely upon a custom that the engine would not be moved until the engineer knew that defendant was in a place of reasonable safety. Plaintiff's testimony, heretofore noted, from which we held the jury reasonably could have found that plaintiff relied upon defendant's observance of rule 30, likewise furnished a basis for a reasonable inference that plaintiff relied upon the custom. That is to say, if plaintiff relied on the bell ringing before the engine moved, he necessarily relied upon the engine not moving while he was in a place from which he would be thrown from the engine if it moved while he remained there. However that may be, and in any event, we think that the jury reasonably could have inferred from all the facts and circumstances in evidence that plaintiff, as defendant's employee in the usual pursuit of the duties of his employment, acted in reliance upon the observance of the custom; and certainly so in the absence of substantial evidence to the contrary. See: Brock v. Mobile & O. R. Co., 330 Mo. 918, 930 [5], 51 S.W.2d 100, 104 [8–11].

■ Defendant contends that the instruction failed to require the necessary finding, but assumed that the running board was not a reasonably safe place. Defendant, to support that contention, relies upon Reese v. Illinois Terminal R. Co., Mo., 273 S.W.2d 217, wherein we held that an instruction was reversibly erroneous which, although hypothesizing defendant's negligence in permitting ice and snow to accumulate and remain in a certain area, did not submit as a specific fact issue whether the area (place of work) was not a reasonably safe place in which to work by reason of the presence of the ice and snow, and Ezell v. Kansas City, Mo., 260 S.W.2d 248, wherein we held that defendant municipality's instruction hypothesizing whether plaintiff, who was riding in an automobile, was contributorily negligent in failing to warn her husband driver of a "fill" in the street, was erroneous for failure to require a finding of plaintiff's knowledge not only of the condition of the street but also her knowledge that the condition was dangerous.

We think it is apparent that those cases do not rule the question here. In each of them an essential finding prerequisite either to plaintiff's recovery in the one case, or to barring recovery in the other, had been omitted. In the instant case a finding that plaintiff was standing in an unsafe or dangerous place at the time the train moved was not an essential finding prerequisite to plaintiff's recovery. This, because instant defendant's negligence was not predicated upon the violation of any duty of defendant to furnish plaintiff a reasonably safe place in which to work. On the contrary, negligence in the instant case was predicated upon defendant's moving the engine under the circumstances hypothesized. The question for the jury, which was effectively submitted by instruction 4, irrespective of other hypotheses in the conjunctive, was whether the engineer failed to exercise ordinary care for plaintiff's safety by moving the engine in the manner in which the evidence showed he did move it, when he knew or should have known that plaintiff was then on the catwalk for his stated purpose, and whether such movement did in fact cause plaintiff to be thrown from the engine to the ground.

■ Defendant's final attack on instruction 4 is that it erroneously placed "an absolute duty on the engineer to *know* that the fireman was in a *position* of reasonable safety if not in his seat before moving the

train." Defendant says that such duty was analogous to the duty the law imposed upon defendant to exercise ordinary care to furnish a reasonably safe place to work and was not an absolute duty. We think defendant has confused a duty imposed by the law with a duty assumed by defendant through a custom and practice. If, as we have held, there was evidence from which the jury reasonably could have found that defendant's custom and practice was that the engineer had to know that the fireman was in a place of reasonable safety, then the custom would be properly hypothesized if it was stated in accordance with the proof. The instruction, when it dealt with the requisites of defendant's negligence, as opposed to the existence of defendant's custom, did require the jury to find that by moving the engine under the hypothesized circumstances, "defendant railroad company failed to exercise ordinary care for the safety of Mr. Willis and was negligent."

■ Defendant contends that the trial court erred in refusing to give instruction C: "* * * you are instructed that if you find and believe from the evidence that it was not customary to sound an engine bell before moving the engine during switching operations such as were being performed on the occasion referred to in the evidence, and under the circumstances existing at the time as shown by the evidence, then defendant was under no obligation to sound the bell before moving the engine * * *, and you cannot find that defendant was negligent in failing to sound the engine bell on that occasion."

Defendant says the foregoing was a converse of instruction 3 and that, under the well-established principle that a defendant may submit any theory of the case supported by substantial evidence, the court was bound to give that instruction.

Instruction 3, set out heretofore, hypothesized defendant's violation of rule 30 and required the jury to find that the rule was applicable to the movement in question. Defendant's given instruction 10

was a converse of number 3 as to the applicability of the rule under the facts in evidence and told the jury that if the rule "did not apply to the movements of engines engaged in switching operations in the railroad yard, then you cannot find that defendant violated Rule 30 in this case."

Plaintiff's instruction 3 did not predicate a recovery on a violation of a custom to ring the bell but submitted a violation of the rule. Thus, it appears to us, defendant was not entitled to instruction C, at least in the absence of a contention by defendant, supported by evidence, that although rule 30 applied to the engine movement in question, nevertheless, an established custom indulged in by all employees, including plaintiff, constituted a waiver by them of the necessity for defendant to observe the rule.

Defendant contends that the trial court unduly restricted its cross-examination of plaintiff. During his cross-examination plaintiff answered, as to whether he did "quite a bit of drinking", that he took an occasional drink but not while on duty. Defendant then asked: "Have you been arrested a number of times, probably twelve or fourteen times—." An objection, followed by a conference at the bench out of the jury's hearing, developed that counsel intended to ask concerning plaintiff's arrests and convictions for intoxication and peace disturbance on the theory that such would show the reason for his not working steadily. The court sustained the objection and instructed the jury to disregard the question. Later, in covering the subject of the amount of plaintiff's wages in prior years, defendant pressed for an answer as to why plaintiff had not worked steadily and, in connection with the inquiry as to why plaintiff did not feel like working all the time, asked whether plaintiff didn't feel well because he was drinking more than he should and whether he got drunk. Plaintiff answered both questions in the negative. Defendant then asked if plaintiff did not get drunk a number of times in 1949, 1950, and 1951. Plaintiff's objection resulted in

another bench conference out of the jury's hearing at which defendant's counsel insisted that he had a right to develop whether plaintiff failed to work at times because of drinking. The court sustained plaintiff's objection.

Later, defendant was inquiring into plaintiff's reason for not appearing at two hearings, scheduled by defendant as to the cause of the instant accident. After the cross-examination had proceeded to develop that plaintiff had not appeared at either hearing because, plaintiff said, he was ill, an objection was sustained to further inquiry. Defendant's counsel insisted that he was entitled to show plaintiff's arrest and conviction (apparently because of drunkenness) to affect plaintiff's credibility as a witness.

In Fisher v. Gunn, Mo., 270 S.W.2d 869, 875–877, we held that Section 491.050 RSMo 1949, V.A.M.S., makes it mandatory on a trial court to permit a conviction for misdemeanor (except perhaps where too remote) to be shown to affect the witness's credibility. This, for the reason that "criminal offense," as used in the above-mentioned statute, includes a misdemeanor for which punishment by fine or imprisonment, or both, may be imposed. And we said that "the bounds of the cross-examination, in so far as concerns one's right to show a prior conviction, have been fixed by the statute." 270 S.W.2d 876 [8].

 It is difficult to know from the record just what course defendant's counsel desired to follow at the trial in these cross-examination incidents, and it is not entirely clear whether defendant now complains of a general restriction of his right to cross-examine or whether he complains specifically of the trial court's refusal to permit plaintiff's convictions for intoxication and peace disturbance to be shown to affect plaintiff's credibility. In view of the fact that defendant's main reliance in its brief is upon Fisher v. Gunn, supra, we assume defendant's main position is the latter. The trouble with defendant's present position in that respect is that the record demonstrates that defendant's counsel did not make known to the trial court that he was offering to show, if he was, plaintiff's prior convictions of criminal offenses, i. e., of a felony or misdemeanor. On the contrary, it is apparent from the record that the trial court believed that the convictions involved were convictions in city courts for violations of city ordinances. If the trial court was mistaken in that, defendant's counsel, although opportunity was present, did nothing to enlighten the court. Violation of a city ordinance is not a criminal offense and such a conviction may not be shown to affect the witness's credibility under Section 491.050, supra. Stokes v. Wabash R. Co., 355 Mo. 602, 610, 197 S.W.2d 304, 308 [9, 10]. Under the circumstances, the trial court did not err.

 Now, considering the aforenoted incidents from the standpoint of whether, because of them, there was an undue restriction of cross-examination. We think there was not. Defendant's counsel's avowed purpose was to show the reason that plaintiff did not work steadily, and presumably, the possible reason he did not appear at the hearings. Plaintiff admitted that he did not work steadily and denied that the reason was too much drinking, and admitted that he had not attended either hearing because of illness. The reasons for plaintiff not having worked steadily in the past or for not having appeared at the hearings were clearly collateral matters. It does not appear, and counsel have not demonstrated, that either inquiry was relevant to the issues in the instant case. While, for impeachment purposes even as to collateral matters, within the trial court's discretion, a party or witness may be asked concerning the commission of wrongful or immoral acts, subject to the right of refusal to answer incriminating questions, still the cross-examiner is bound by the witness's answer. And the trial court may exercise a sound discretion in how far to permit cross-examination on collateral matters to proceed. Arnold v. Alton R. Co., 348 Mo. 516, 521, 154 S.W.2d 58, 60 [3, 4] [5]; Hoffman v. Graber, Mo.App., 153 S.W.2d 817, 820 [4].

██ ██ Defendant also contends that his cross-examination of plaintiff in two other respects was unduly limited. Plaintiff had been hospitalized in March 1950 because of a head injury which he said he sustained when his head struck a radiator while he was wrestling in a hotel room. The trial court sustained objections to questions as to whether plaintiff had told hospital personnel (in March 1950) that someone had hit him over the head with a club. The Wabash Employees' Hospital Association record was adduced and parts were read to the jury. The trial court sustained objections to the reading of certain parts of the record which pertained to the March 1950 hospitalization. Among them were these parts of the surgeon's report: "The fact this patient has apparently been drinking heavy * * *. This patient cannot be aroused to tell how he received his head injuries * * *. Later on after treatment states some one crept up behind him and hit him over the head with a big club." Defendant was permitted, however, to read to the jury the portions of the hospital record which fully disclosed the nature and extent of the March 1950 head injury. The hospital record is not before us on this appeal, but it seems clear that the entries in question were not in the nature of admissions against interest which were relevant to any issue in the instant case and it does not appear that the entries themselves threw any light upon the nature and extent of the prior head injury. Thus, it follows that the trial court correctly excluded those hospital record entries. But, although the question of the admissibility of the hospital record entries seems to be inferentially involved, it appears that defendant's exact point may be that counsel should have been permitted to examine plaintiff concerning the truth of the statements reflected by those entries on the ground that if plaintiff admitted the truth of the facts stated, such would have tended to have impeached the plaintiff as a witness. Suffice to say as to this contention that plaintiff, in effect, denied that he told anyone at the hospital that somebody hit him over the head with a club. This, because he said affirmatively that he told "them" (at the hospital) that he had hit his head on a radiator. The only direct question which the court refused to permit plaintiff to answer (on the matters reflected in the hospital record) was, "Didn't you tell them that somebody hit you over the head with a club?" Inasmuch as this was impeachment on a collateral matter, and plaintiff had, in effect, answered that he had not so told "them," defendant was bound by plaintiff's answer. Hoffman v. Graber, supra.

In any event, our review of the record convinces us that the trial court did not abuse the discretion which it had to control the scope and extent of plaintiff's cross-examination in the instances of the present complaints. Hungate v. Hudson, 353 Mo. 944, 948, 185 S.W.2d 646, 649 [6–10], 157 A.L.R. 598.

██ Defendant next contends that the trial court permitted plaintiff's counsel to cross-examine defendant's witnesses on immaterial matters. It would extend the length of this long opinion beyond reasonable limit to discuss each of the 20 or more instances wherein improper cross-examination is charged. We have reviewed all the portions of the record to which our attention has been directed and we find nothing therein which indicates that the trial court did other than to exercise a sound discretion to allow the cross-examiner some latitude and yet keep the cross-examination within reasonable limits. Our examination shows that in the 20 instances about which complaint is now made, the trial court sustained defendant's objections in nine instances; in two of them there was no objection; the reason for overruling objections in two instances was because the witness had answered prior to the objection; in two there was no ruling by the trial court; in one instance, although two or three questions were permitted over the sole objection that the field of inquiry pertained to immaterial matters, the trial court then sustained an objection to further questions of the same tenor; in one instance, although an objection to a question was overruled, no re-

sponsive answer was ever made; and in three instances the objections overruled were as to matters which obviously could not have been prejudicial. Only once did defendant's counsel request a mistrial because of a question on cross-examination. In that instance, plaintiff's counsel reminded the witness that he (the witness) was under oath. Then, defendant's counsel: "I object to that question and I am going to ask Your Honor to reprimand Mr. Hullverson for asking that question." The court: "I think it is an improper question. The objection will be sustained." Defendant's counsel: "And I am going to ask Your Honor to declare a mistrial in this case because of the improper question." The court: "The jury will be instructed to disregard the question." Defendant's counsel: "I am going to ask the jury be instructed to disregard the question." The court: "I have sustained that." It is apparent that the trial court did not abuse its discretion in refusing to grant a mistrial in the instance reflected above.

We are convinced that none of the incidents and rulings now complained of, either singly or in combination, had the effect of prejudicing defendant or preventing a fair trial.

██ As noted, plaintiff remitted $8,000 of his $30,000 verdict pursuant to the trial court's conditional order overruling defendant's motion for new trial. Defendant contends that the $22,000 judgment is still excessive.

Plaintiff, 47 at trial time, had been defendant's employee for 25 years. His gross earnings for 1951 and 1952 averaged about $302 per month, although in the two weeks prior to his injury his gross earnings were $372. He had not worked and had received no wages for the 15 months since the injury, but at trial time, May 17, 1954, he was willing to try to work but thought he could do so for only one or two days a week because of the condition of his leg and back.

Plaintiff was unconscious for a time after his fall from the diesel, and it was several days before he knew anything for sure. He was found some time after his fall by a Santa Fe crew which arranged that he be taken to Research Hospital in Kansas City where he remained for 41 days. He then was transferred to the Moberly Wabash Hospital where he remained for two months.

Plaintiff said his left leg had been broken in the knee, his heel, back, and head were injured, and his right ankle was sprained. His left leg remained in traction for 22 days and thereafter a cast was applied. He developed pneumonia for which 42 penicillin shots were administered. Further hospital treatment consisted of opiates, sedatives, massage, and hot baths to relieve pain which he suffered in his back, leg, and head.

Plaintiff also testified that he was in good health prior to his injury; his left leg, ankle, and knee were painful at trial time; he had pain in the "small" of his back; that he had, since the accident, suffered headaches but was generally free of them by trial time; and that his left leg ached when he stood on it for any length of time and was more painful during damp weather.

Plaintiff was examined by an orthopedic surgeon on November 3, 1953, and on March 8 and April 30, 1954. On the first examination plaintiff limped and complained of pain in his left hip and back, of pain, swelling, and limitation of motion in his left knee and leg. On examination the doctor found that the left knee was three fourths of an inch larger than the right, and flexion of the left knee was limited as compared to the right; there was a 4½-inch tender healed scar near his left knee and a 4-inch scar on the lower portion of the left leg; there was an abnormal lateral motion of the lower left leg indicating instability in the left knee; the end of the fibula was prominent in the knee joint; there was tenderness over the cartilages of the left knee; and the patient complained of pain on movement of his left hip.

X rays disclosed that plaintiff had sustained a compound comminuted fracture of

the tibia, probably seven or eight separate breaks, two of them extending into the knee joint and others extending down the left leg 5 to 5½ inches. The fractures extending into the knee joint had torn the cartilages. There was traumatic arthritis in the left knee joint as a direct result of the trauma of the accident, which arthritis would be painful and would cause some limitation of movement. There was an increase of osteoporosis in the bones of the left leg which is a form of atrophy, or loss of the hard substance in the bone, due either to the accident or his inability to properly use the leg.

X rays also disclosed osteoarthritis in the left hip and in the lumbar spine which pre-existed the injury but which was aggravated by it.

The doctor's findings on the March and April 1954 examinations were essentially the same as those of November 1953, except that there was some diminution in the size of the left knee. Plaintiff complained at the later examinations of increased pain in his lower back.

The doctor's conclusions were that plaintiff had 75 to 85 per cent permanent disability of the lower left leg due to the fracture and the traumatic arthritis; that the leg was in such permanent condition as to prevent plaintiff's following for any appreciable time a gainful occupation involving manual labor; that plaintiff's disability in his back was probably due to an aggravation of the pre-existing arthritis caused both by the trauma of the accident and by plaintiff's change in posture effected to protect his injured left knee; that plaintiff probably will continue to have pain in the left leg and will require future treatment by physiotherapy and sedation.

In summary, it appears that plaintiff's pneumonia, sprained right ankle, and his head and heel injuries were temporary; that his left leg and left knee joint have been seriously and permanently injured resulting in as much as 85 per cent disability in the use of the lower left leg and resulting in permanent traumatic arthritis in the left knee joint; and that pre-existing arthritis in the lower back has been aggravated. Perhaps, from plaintiff's standpoint, the most damaging aspect of his injury is his inability to do, or at least continuously to do, manual labor, including the performance of duties as a railroader, the occupation he had followed for 25 years.

We have examined the authorities cited in support of the judgment as well as those cited in support of its claimed excessiveness. We have attached importance to the fact that the trial court believed the $30,000 verdict was excessive by $8,000. We have taken into account plaintiff's age, his approximate $4,500 loss of gross earnings to trial time, the permanent disabling nature of his injury, and the fact that his earning capacity has been impaired although not destroyed. We have recognized our duty to attempt to maintain some reasonable uniformity of judgments in personal injury cases involving similar injuries. We have accorded deference to the considered opinion of the trial judge. We have reached the conclusion that, while the amount of the final judgment entered is certainly adequate and perhaps generous, we should not hold that the trial court abused its discretion in limiting the required remittitur to $8,000.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.