**STATE of Missouri, Respondent,**

v.

**Charles Marvel MOORING, Appellant.**

**No. 53781.**

Supreme Court of Missouri,
Division No. 1.

Oct. 13, 1969.

---

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Shaw, Hanks & Bornschein, By Charles M. Shaw, Clayton, for appellant.

HOUSER, Commissioner.

This is an appeal from a conviction and sentence of 50 years' imprisonment on a charge of rape.

Appellant first contends that the court erred in compelling him to be tried before an illegally constituted jury, and in an illegal manner, in that the jury consisted entirely of Caucasians selected from a venire of some forty jurors all of whom were Caucasians; that no hearing was held to determine whether there was a selective exclusion of non-Caucasians from the venire and that race was not a factor in the selection of the venire; that no evidence was offered by the state to explain why there were no Negroes or other non-Caucasians on the venire panel. Appellant cites Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22, and Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25.

■ The burden on an inquiry of this kind is initially on the defendant, and the burden does not shift to the state until the defendant makes out a *prima facie* case of illegal exclusion by showing the existence of a situation such as that which obtained in Whitus, where the jury was selected from county tax digests which by law were required to be kept on a segregated basis, and where no Negroes had served on a jury within the memory of witnesses, notwithstanding the population of the county was 45% Negro; or in Jones, where the same method of jury selection was employed as in Whitus and there was a considerable discrepancy between the percentage of Negroes living in the county and the percentage of Negroes serving on juries; or in Coleman, where the evidence demonstrated that in that county no Negro had ever served on a grand jury and but few, if any, Negroes had served on petit juries. Appellant made no such *prima facie* showing in this case. He demonstrated no historic exclusion of Negroes from the jury rolls of St. Louis County; he showed no disparity between the percentage of Negroes appearing on jury panels and the percentage of Negro as compared with white residents of the county. At the commencement of the trial appellant's counsel stated orally to the court that not one Negro appeared on the venire, and that "when considering" the tax rolls, assessment books and voter lists and registrations of St. Louis County "there is a presumption under the most recent Supreme Court decision of selective exclusion." Counsel did not state what a consideration of the tax rolls, etc. would have disclosed in this respect. There was no motion to quash the venire on this ground; nothing

but an oral objection to proceeding to trial. There was no effort to introduce any evidence of the kind referred to in Whitus, Coleman and Jones, supra, or otherwise, in support of the objection. In his objection counsel did not charge or offer to prove systematic exclusion or discrimination, contenting himself with the suggestion that the objection put the burden on the state "to bring forth evidence that there has been no selective exclusion." Our recent decision in State v. Dowe, Mo.Sup., 432 S. W.2d 272 [5, 6] indicates clearly that bare assertions of counsel during the trial do not prove themselves; and from that opinion it is clear that systematic exclusion and percentage discrimination must be alleged and proved in order to impeach a jury panel on this ground.

■ Appellant was not absolutely entitled to have Negroes on the panel that tried him or on the panel from which the jury was drawn. Only if he was deprived by design of the chance of having Negroes on the jury would his constitutional rights have been invaded, State v. Amerison, Mo.Sup., 399 S.W.2d 53, 56 [8], quoting from State v. Logan, 341 Mo. 1164, 111 S. W.2d 110, 114, 115, and that was not shown.

Appellant's second point is that the court erred in permitting cross-examination of appellant's wife with respect to her receiving aid to dependent children from the state department of welfare, because (1) it was beyond the scope of the examination in chief (§ 546.260, RSMo 1959, V.A.M.S.).; (2) it tended to establish that the witness committed a crime in applying for A. D.C.; (3) there was no evidence that she made any statement to the welfare department concerning the whereabouts of her husband during the month of February, 1966 (during which month, on February 9th, the crime was committed).

Appellant's defense was that of alibi—that he was with his wife and family on the date and at the hour when the crime was committed, celebrating his wife's birthday. The wife, Mrs. Mooring, called as a witness for the defense, so testified. After the defense rested the state "in rebuttal" (according to the record) called Mrs. Mooring to the stand for the avowed purpose of laying the foundation for possible rebuttal of Mrs. Mooring on the basis of prior inconsistent statements. The parties and the court, however, treated her second appearance on the stand as a recall for further cross-examination. It is so referred to in appellant's brief. On this appeal we will so consider it.

The prosecuting attorney had received information that the welfare file showed that on January 25, 1966 Mrs. Mooring told a welfare employee that she did not know her husband's whereabouts and on March 24, 1966 that she still did not know the whereabouts of her husband. The prosecutor wished to inquire of Mrs. Mooring whether she made prior statements denying knowledge of her husband's whereabouts, to lay the foundation for contradiction of her trial testimony that he was with her at the time of the commission of the crime. On recall the court allowed the state to elicit from her that she had been living with her husband for several months prior to February, 1966; that she was receiving A.D.C. on February 9, 1966 and that she knew that in order to qualify for aid at that time under existing law her husband could not be living with her. Then the prosecutor asked her if in order to receive aid for February, 1966 she told the welfare department that she was not living with her husband during that month, and her answer was "No."

■ The state had the right to ask these questions, even on a collateral matter, for the purpose of discrediting the witness by impeaching her character if asked in good faith, State v. Bagby, 338 Mo. 951, 93 S.W.2d 241, 248 [10], subject to the right of the witness to refuse to answer incriminating questions, Willis v. Wabash R. Co., Mo.Sup., 284 S.W.2d 503, 512 [10], and notwithstanding the cross-examination was

beyond the scope of the examination in chief. In order to impeach a witness on the basis of prior inconsistent statements it is necessary to lay a foundation therefor by asking the witness "whether he made the statement, quoting it and pointing out the precise circumstances under which it was supposedly made." Aboussie v. Mc-Broom, Mo.App., 421 S.W.2d 805, 807. But in view of the fact that the questions were directed to a collateral matter the state was bound by the witness' answer. State v. Bagby, supra, 93 S.W.2d, l.c. 248 [11]; State v. Hayes, 356 Mo. 1033, 204 S.W.2d 723, 726 [6]; State v. Hamilton, Mo.Sup., 310 S.W.2d 906, 909 [7, 8]. After the witness gave her "No" answer the court sustained objections to the same inquiry as to the months of January and March, 1966, and to the question whether in order to get aid she told welfare officials that her husband was not living with her. In judging the presence or absence of prejudice we observe that Mrs. Mooring's testimony left the clear inference that she received public assistance notwithstanding she had informed the welfare people that her husband *was* living with her.

Appellant's complaint that "the attempted impeachment fell short of what was promised to the Court" and was "illegal and highly prejudicial" obliquely raises the question of the good faith of the state. We find no lack of good faith. When the prosecuting attorney first sought to lay the foundation for possible rebuttal appellant's counsel pointed out the difficulty which would present itself if after allowing the question to be asked the state failed to produce the impeaching testimony, and the court asked the prosecuting attorney if he was assuring the court that he would produce the impeaching evidence. Thereupon the prosecuting attorney asked for a conference in chambers, at which he frankly revealed the source of his information on the basis of which he desired to inquire (welfare files which admittedly he had not seen or reviewed, which purportedly

recorded statements made by Mrs. Mooring to a welfare employee who was then in the State of Wisconsin), and when he had received the information (within the last ten minutes).

█ We find no prejudice to the rights of appellant, particularly in view of the fact that after the prosecuting attorney's inquiry was concluded *appellant's* counsel asked Mrs. Mooring questions in the course of which he developed that she knew what the A.D.C. law was; that at the time she was getting A.D.C. her husband was living with her and that "that's against the law."

Next, appellant excepts to the giving of Instruction No. 3, as an improper comment on the evidence and an undue "judicial emphasis" of Instruction No. 1. No. 3 read: "All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly is the act of all and each one so acting."

It is argued that No. 3 assumed a controverted fact (that two or more persons were acting together or jointly in committing this crime) and that it gave undue prominence to the following portion of No. 1: "* * * if you further find and believe from the evidence beyond a reasonable doubt that the Defendant, together with others, did then and there unlawfully * * *." Appellant considers that No. 3 constituted an absolute statement of a rule of law, not coupled with qualifying language such as "if you find and believe from the evidence," and unconnected with any requirement of a finding that two or more persons were acting together or jointly.

█ This court approved an almost identical instruction in State v. Williams, 309 Mo. 155, 274 S.W. 427, stating that it was general in its terms and definitive in its character; that it correctly states the law; that it is not necessary for an instruction of this character to require a

finding; that explicit directions in this regard appear in other instructions, and that is all that is required, under the rule that all instructions must be read and construed together; that the instruction being purely definitive assumes nothing, and is not a mere abstract statement of law. We reiterate here what was said in Williams. No. 3 was appropriately given in this case, in which the evidence showed that appellant and two other men all raped the victim, two of the three holding her down while the third, in each instance, committed the act of intercourse. State v. Harris, Mo.Sup., 351 S.W.2d 713 [6]; State v. Reece, Mo.Sup., 324 S.W.2d 656 [9]; State v. Alberson, Mo.Sup., 316 S.W.2d 529 [3].

Appellant's fourth and fifth points are that the court erred in giving two instructions, in that Instruction No. 4 shifted the burden of proof from the state to the defendant, requiring him to prove his whereabouts, and that Instruction No. 5 relieved the state of the burden of proving its case beyond a reasonable doubt and placed the defendant in a position of having to overcome a substantial doubt. The two instructions follow:

### "INSTRUCTION NO. 4

"You are instructed that the defendant has interposed as a defense what is known in law as an alibi, that is, that even if the offense was committed, as charged, he was at the time of the commission thereof at another and different place than that in which such offense was committed, and therefore, was not and could not have been the person who committed the same. Now, if the evidence leaves in your minds a reasonable doubt as to his presence at the place where the offense was committed at the time of the commission thereof, you will find him not guilty."

### "INSTRUCTION NO. 5

"You are further instructed that the Information in Lieu of Indictment contains the formal statement of the charge, but it is not to be taken as any evidence of the guilt of the defendant.

"The law presumes a defendant to be innocent, and this presumption continues until it has been overcome by the evidence which proves his guilt beyond a reasonable doubt; and the burden of proving his guilt rests with the State.

"If, however, this presumption has been overcome by the evidence and the guilt of the defendant proved beyond a reasonable doubt, your duty is to convict.

"If, upon consideration of all the evidence, you have a reasonable doubt of the guilt of the defendant, you should acquit the defendant; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence."

■ We find no fault with either instruction. That portion of No. 4 telling the jury that defendant had interposed the defense of alibi could not reasonably be interpreted by laymen to mean that the burden is on defendant to prove the defense, as suggested. Appellant's criticism of No. 4 is not new. It was considered and rejected in State v. Rima, Mo.Sup., 395 S. W.2d 102, 106 [4]; State v. Bryant, Mo. Sup., 375 S.W.2d 107, 109 [2]; State v. Washington, Mo.Sup., 364 S.W.2d 572, 577; State v. Williams, supra, 274 S.W., l.c. 435 [12]; State v. Hillebrand, 285 Mo. 290, 225 S.W. 1006, 1007 [2]; State v. Prunty, 276 Mo. 359, 208 S.W. 91, 95 [5], and other cases. The instruction did not assume that state and defendant have coequal duties to prove their respective theories, as urged. The last sentence was not ambiguous, as charged. Nor did No. 4 shift the burden of proof by making no distinction between the state's evidence and defendant's evidence. The word "evidence" in the last sentence properly contemplated all of the evidence, both the state's and the defendant's. In State v. Bryant, supra, 375 S.W.2d, l.c. 109, we

held this same objection insubstantial, saying that " 'The evidence' would be taken by the average person to mean the evidence in the case, or all of the evidence, and could not reasonably be understood to be limited to that of one party or the other, in the absence of some language indicative of an intention to thus restrict its reference." In State v. Abbott, Mo.Sup., 245 S.W.2d 876, in reviewing a similarly worded alibi instruction, different in substance only in that it incorporated the element of reasonable doubt in the alibi instruction instead of separately, this Court held that "* * * This instruction 4 placed no burden on defendants to prove their alibi * * *. The very nature of this offense (robbery) required the state to prove the presence of defendants at the scene of the crime in order to prove their guilt. * * *" The same considerations apply in this rape case.

There was no contradiction between the "substantial doubt" portion of No. 5 and the requirement of proof beyond a reasonable doubt in the second sentence. The requirement that the doubt be a substantial doubt did not minimize, erode or effectively destroy the burden placed upon the state, as contended. Nor do we agree that a possibility of innocence may be equated with reasonable doubt, or that the total effect of No. 5 was to place upon defendant the burden of establishing substantial doubt or something more than a possibility of innocence in order to secure an acquittal. No. 5 imposed upon the state the burden of proving defendant's guilt, and a reading of Nos. 4 and 5 together makes it clear that the burden was placed on the state to prove beyond a reasonable doubt that the defendant was present at the scene of the crime at the time it was committed. See State v. Jones, Mo.Sup., 384 S.W.2d 554, 559 [5]; State v. Armstrong, Mo.Sup., 361 S.W.2d 811, 818 [9]; State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 26–27 [7].

Appellant made a further point in his brief but abandoned it on oral argument, conceding that it was without merit, and therefore we will not burden this opinion by stating it.

No error appearing, the judgment and sentence are affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.