STATE of Missouri, Respondent,

v.

**Raymond CROCKETT, a/k/a Ronald Bright, Appellant.**

No. 28136.

Missouri Court of Appeals, Kansas City District.

Nov. 1, 1976.

**316**

Kenneth P. Seck, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury of robbery, first degree. § 560.120, RSMo 1969. Appellant charges errors going to the adequacy of the information, sufficiency of evidence and verdict-directing instruction, admission of evidence, constitution of the jury, and effective assistance of counsel. Affirmed.

The information charged:

"That at the County of Cass and State of Missouri, on or about the 30th day of

August, 1974, one Raymond Crockett did then and there, willfully, unlawfully and feloniously, by means of a certain object resembling a chrome pistol or revolver the same then and there appearing to be a dangerous and deadly weapon, take, steal and carry away United States Currency, to wit: FOUR HUNDRED NINE DOLLARS AND NINETY THREE CENTS ($409.93), the personal property of David Shuetz, then and there in the lawful care and custody of Lewis O. King and David L. Evans, by then and there putting the said Lewis O. King and David L. Evans in fear of an immediate injury to their persons and then and there did feloniously rob, take, steal and carry away the said money from them, in the presence of and against the will of the said Lewis O. King and David L. Evans with the felonious intent to permanently deprive the owner of the use thereof and to convert the same to his own use; * * *."

On August 30, 1974, Lewis Oliver King was employed by David Shuetz at the Aments Fina Service Station owned by Mr. Shuetz on Missouri Highway 7 in Garden City, Cass County, Missouri. He was working with fellow employee David Evans. Around 10:45 p. m., two black men, defendant Raymond Crockett and a companion (Ronnie Williams), drove into the station in a light blue, late model Maverick and asked for $2.00 worth of gas and an oil check. Defendant had been at the station about a half hour earlier when he was attended by David Evans. Mr. King checked the oil while his friend, Gary Taylor, held the hood which would not otherwise stay open. Mr. Evans was delivering the gas to the Maverick. After the Maverick had been serviced, defendant was at the candy machines inside the station, Williams was in the rest room, and Mr. King, Mr. Evans, and Mr. Taylor were in the station. Williams came from the rest room; defendant pulled out a small-caliber, nickel-plated, automatic pistol and pointed it at Mr. King. "He told us to give them all the money that we had. * * I was shocked at first * * * and then I

pulled out all the change [about $10.00] that I had in my pocket and laid it on the counter and I opened up a drawer and took out the sales tax box and laid it up on the counter." Mr. King also had $50.00 in his coverall pocket which he handed over prior to and in fear of a subsequently threatened search. During this time, Williams took $5.00 from Mr. Taylor, and defendant searched Mr. Taylor and Mr. Evans. Defendant took the "station wallet," together with its contents, from Mr. Evans. " * * he told everybody to keep cool and he put Gary's wallet up on the counter and then he started to leave and he seen the money [$50.00] that I tried to put under the [credit card] machine and he come back and got it. Then he said we probably all better come outside the station while they left * *." While defendant searched Gary and David, he told Williams to go start the car, which he did. "They left in as big a hurry as they could." Mr. King ran back into the station and called the sheriff's office at Harrisonville. He reported the robbery, and described defendant as a black man wearing a brown flowered-type shirt, black pants and a black fishnet-type hat which he identified as State's Exhibit 1, and Williams as a black man wearing a light tan shirt and light blue pants. He also reported that Williams was driving a light blue Maverick northwest on Highway 7 toward its intersection with U. S. Highway 71, eight or nine miles northwest of Garden City.

Prior to the events described by Mr. King, Terri L. Bass had been in the station and had given David Evans a check in exchange for $3.00 in cash.

O. L. Collins, lieutenant in the Cass County sheriff's office, was in an unmarked vehicle with Corporal Gordon of the Missouri State Highway Patrol, engaged in burglary surveillance at a location "four or five miles south of 7 and 71 and two miles off of 71" when he received a radio message concerning the robbery from his dispatcher. They proceeded north to the junction of 7 and 71 where they observed Detective Hragyil, also in an unmarked vehicle. They advised Detective Hragyil that if he would stay at

his location they would proceed toward Garden City looking for "a late model Maverick, light blue in color, occupied by two colored males." They observed such vehicle and occupants about 300 yards east of Detective Hragyil's position and reported the observation over their radio. They turned around, proceeded to the intersection of 7 and 71, and then proceeded north pursuant to radio transmission by Detective Hragyil. They stopped behind Detective Hragyil who was stopped behind the Maverick. Defendant was occupying the passenger side of the Maverick. Lieutenant Collins looked into the car to tell the driver (Williams) to get out, at which time he observed a red shop towel containing a quantity of change and a $5.00 bill. Both occupants were arrested, the towel and bill were seized, and a search of defendant revealed $389.00 in currency and a $3.00 check, State's Exhibit 2, dated August 30, 1974, drawn on the Garden City Bank by Terri Lee Bass in favor of Aments. State's Exhibit 1, defendant's hat, was removed from his head. Defendant gave his name as Raymond Crockett; he was carrying an application for a Kansas driver's license in his real name, Ronald Bright. The "station wallet" and robbery weapon were never found.

Detective Joe Hragyil of the Cass County sheriff's office received word of the robbery by "radio transmission from our dispatcher that he got a phone call from the filling station attendants in Garden City that they had just been held up." He was sitting in his vehicle westbound on 7 facing U.S. 71 northbound. He observed the Maverick going toward U.S. 71 after an alert from Lieutenant Collins and Corporal Gordon. He pursued the car northbound on U.S. 71 at speeds of 80 to 85 miles per hour for a mile or mile and a quarter, after which he brought the vehicle to a stop. Defendant was seated on the passenger side of the Maverick wearing a knit hat, Exhibit 1, black trousers, flowered kind of slick material shirt, and high-heeled shoes. He arrested both occupants.

Gary Taylor saw defendant when he came to the station the first time. He was afoot, asked for gas, and David Evans gave him a jug of gas. He saw defendant again when he returned about fifteen minutes later in a late model, light blue Maverick accompanied by Williams. In response to defendant's request, Lewis King checked the oil while he supported the hood and Mr. Evans serviced the car with gas. As he went into the station, he observed a piece of yellow paper covering the rear license plate. Mr. Taylor corroborated Mr. King in the details of the robbery, including the use of a small caliber gun. He was afraid during the robbery.

David Evans corroborated Mr. King with respect to their employment at Aments Fina Station, the check taken from Terri Bass, filling defendant's request for a jug of gasoline on his first visit to the station, servicing the Maverick on defendant's second visit to the station, and the details of the robbery, including use of a gun by defendant. David Shuetz was the owner of the $300 that Mr. Evans laid on the counter at defendant's direction.

John Gordon of the Missouri State Highway Patrol corroborated the events of August 30, 1974, as recited by Lieutenant Collins.

Defendant offered no evidence, and the case was submitted by instructions, including No. 5:

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on or about August 30, 1974, in the County of Cass, State of Missouri, Lewis King and David Evans had possession of U.S. Currency in the approximate amount of Four Hundred Dollars, and

"Second, that at that time and place the defendant took the property from Lewis King and David Evans against their wills by causing them to fear immediate injury to their persons, and

"Third, that the defendant took the property with the intent to permanently deprive Lewis King and David Evans of the property and to convert it or any part of it to the use of the defendant and

another, then you will find the defendant guilty of robbery in the first degree.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

"If you do find the defendant guilty of robbery in the first degree, you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than five years nor more than life imprisonment. (MAI–CR No. 7.60)."

The jury found the defendant "guilty of Robbery in the First Degree as submitted in Instruction No. 5."

Appellant's complaint against the information (Point IV) is that it is susceptible to interpretation that appellant was being charged with robbery, first degree, by means of a dangerous and deadly weapon under Section 560.135, RSMo 1969, and he had put substantial reliance in his defense on the State's inability to produce a weapon and the inability of witnesses to say whether it was loaded and to describe it in detail. Citing *State v. Scarlett*, 291 S.W.2d 138 (Mo.1956), involving a charge of attempt to commit robbery, first degree, under Section 560.120 as opposed to robbery, first degree, by means of a dangerous and deadly weapon, he asserts that the information was defective and unsatisfactory insofar as informing him of essential matters necessary to preparation of his defense in denial of his rights under Mo.Const. Art. I, § 18(a), and U.S. Const. Amendments V and XIV.

The case against defendant was submitted by Instruction 5 as one of robbery, first degree, in causing the victims to fear immediate injury to their persons; and the jury found defendant guilty of robbery, first degree, as submitted by Instruction 5.

Section 560.120 provides that "Every person * * * who shall be convicted of feloniously taking the property of another from the person of his * * * servant, clerk or agent, in charge thereof, and against the will of such * * * by putting him * * * in fear of some immedi-

ate injury to his or her person, shall be adjudged guilty of robbery in the first degree."

It is sufficient to charge robbery, first degree, in the language of the statute, and it is not necessary to allege the acts of defendant which resulted in the victims being placed in fear of an immediate injury to their persons. *State v. Reed*, 412 S.W.2d 187 (Mo.1967). Consideration of the information against defendant with Section 560.-120 shows that he was charged in the language of the statute with the offense of robbery, first degree, by causing his victims to fear immediate injury to their persons. Beyond the requirements of the statute, the information also advised defendant of his acts which resulted in his victims' fears. As in *State v. Spencer*, 486 S.W.2d 433, 435 (Mo.1972), "The information did charge [or suggest] robbery in the first degree with a dangerous and deadly weapon, but the state was not required to submit on such charge, inasmuch as the information was sufficient to support a charge of first degree robbery, without reference to the use of a deadly weapon." See also *State v. Hunter*, 499 S.W.2d 787 (Mo.1973).

Accordingly, defendant was not so inadequately advised of the crime with which he was charged as to prevent him from adequately preparing his defense. Too, the record shows that defendant established that no weapon was ever found, and that he cross-examined witnesses respecting their descriptions of the weapon and its condition.

Appellant's charge against the sufficiency of evidence (Point II) is that David Shuetz did not testify, and "[I]t is * * * stated that Mr. Shuetz was the owner of the money * * *. It is nowhere stated whether * * * Mr. Shuetz was the owner of the filling station * * *, whether * * * Mr. Shuetz was the employer of the witnesses Lewis King and David Evans, whether [they] * * * were the agents and servants of Mr. Shuetz, or whether * * * Mr. Shuetz was the owner of any of the other money which was

taken during the robbery * * *." He asserts there was also a failure of evidence that the possession of King and Evans was lawful and a failure to show the elements of fear, and that the taking was against the will of the owner or his agents.

Reference to the statement contains evidence that witnesses King and Evans were servants in the employ of David Shuetz at the Aments Fina Station robbed by defendant. It also shows evidence that David Shuetz was the owner of the funds taken from King and Evans. As a consequence, the evidence was sufficient to establish robbery of a lawful agent and, hence, robbery of their principal. *Hodges v. State*, 462 S.W.2d 786 (Mo.1971); *State v. Wilwording*, 394 S.W.2d 383 (Mo.1965).

The statement also contains evidence that Lewis King was afraid because defendant had a gun; both Mr. King and Mr. Evans handed money in their possession to defendant under the point of a weapon held by defendant, and the gun-point taking shows that the taking was a taking against the victims' will. *State v. Harris*, 452 S.W.2d 577 (Mo.1970).

The evidence shows a case of robbery, first degree, by means of a dangerous and deadly weapon, which includes as a lesser included offense, that of robbery, first degree, by causing the victims to fear immediate injury. *State v. Hunter*, supra.

Appellant's complaint against the admission of evidence is that the court erred in its failure to suppress State's Exhibits 1 and 2 and the identification of defendant by police officers (Point I); and that the court erred in its failure to grant a new trial for the reason that, at trial, constant reference to a pistol with which defendant was allegedly armed caused him to be prejudiced and inflamed the jury against him (Point V).

In Point I appellant asserts that the court should have sustained a motion to suppress Exhibits 1 and 2 and the officers' identifications "for the reason that said items of physical evidence and identifications were obtained as a result of an illegal arrest and an illegal search and in violation of" his constitutional rights.

It is not necessary to consider the application, if any, of appellant's familiar citations, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Wilson*, 479 F.2d 936 (7th Cir. 1973), because Point I has not been preserved for review. The record is bereft of any pretrial motion to suppress evidence. *State v. Madison*, 459 S.W.2d 291 (Mo.1970); Rule 33.03(a)(1), V.A.M.R.

In any event, the chain of circumstances which commenced with the telephone call by victim Lewis Oliver King to the sheriff's office in Harrisonville, in which the robbery was reported, together with descriptions of the robbers and their vehicle, and their direction of flight, continuing through receipt of radio traffic to the same effect by Lieutenant Collins and Detective Hragyil from their dispatcher, provided probable cause for the resulting stop and arrest of defendant and his companion in the described car a short time after the initial report was made. *Aguilar v. Texas*, supra; *State v. Dodson*, 491 S.W.2d 334 (Mo. banc 1973); *State v. Evans*, 439 S.W.2d 170 (Mo.1969).

With respect to Point V, reference to the weapon held on the victims by defendant in the course of the robbery was competent and relevant evidence on the question whether the victims were caused to fear immediate injury to their persons as submitted in Instruction 5. Such evidence was, no doubt, prejudicial to defendant; however, if the evidence was competent and relevant, it was not received in error because it was also prejudicial. *State v. King*, 334 S.W.2d 34, 39 (Mo.1960).

Appellant's complaint against Instruction 5 (Point III) is that it did not require the

jury to find all the elements of the offense charged as a prerequisite to finding defendant guilty. He argues the instruction requires the jury to find that Lewis King and David Evans had possession of currency but does not require the jury to find that they had a possessory right to the currency superior to that of appellant.

■ Instruction 5 is MAI–CR 7.60, and was required for submission of robbery, first degree, by causing the victims to fear immediate injury to their persons. Rule 20.02(c), V.A.M.R.; *State v. Yeokum,* 516 S.W.2d 535, 537 (Mo.App.1974). Absence of an honest claim to the property by the victims is not a necessary additional element of the offense submitted by MAI–CR 7.60; and if the defendant claims an interest in the property superior to the victims' possession and has evidence to support that theory, it is additionally submitted as a "special negative defense." MAI–CR 7.60, Note on Use 6. No such claim was present in this case.

Appellant's complaint against the jury is that he was prejudiced "by the absence of Negroes" on the jury (Point VII); and that he was prejudiced "due to the absence of an impartial jury" (Point VIII).

In Point VII appellant asserts that despite the trial judge's assurances that no systematic exclusion of jurors occurred in Bates County and that jurors were drawn from general election lists, the inability of the judge to supply figures on the black population of Bates County and the frequency with which black jurors served in Bates County should be allowed to stand in lieu of affirmative evidence of systematic exclusion of Negroes from his jury panel.

■ "It is not the law that the appellant was absolutely entitled to have negroes on the jury that tried him, or even on the panel from which that jury was drawn. It may happen that no negroes (or members of any other particular class of our citizens) will be on the regular panel for a given term of court, or on the special venire for a particular case. If that occur in due course and good faith because of the ratio of white to negro population, or because of actual disqualifications, pure chance or the like, it is within the law; but if the defendant be deprived by design of the *chance* of having negroes on the jury which is to try him, the Federal Constitution may be invoked. * * that no negroes were drawn in the particular case is not conclusive against the State; and * * * that negroes might not have been drawn in due course is not conclusive against the defendant." *State v. Logan,* 341 Mo. 1164, 111 S.W.2d 110, 114[4]. See also *State v. Mooring,* 445 S.W.2d 303, 305 (Mo.1969); *State v. Parker,* 462 S.W.2d 737 (Mo.1971). The burden of showing systematic exclusion is on defendant and it does not shift to the State until defendant makes a *prima facie* case of illegal exclusion. *State v. Mooring,* supra, 445 S.W.2d l.c. 304[1]. See also *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *United States v. Jones,* 452 F.2d 884 (8th Cir. 1971). Neither is it the duty of the court to compile statistics pertaining to the percentage of Negroes eligible and qualified for jury service. *State v. Ross,* 530 S.W.2d 457, 459–460 (Mo.App.1975).

In support of Point VIII, appellant asserts that Bates County is rural, predominantly white, with Negroes "considered something of a rarity," and that "without further data, that it is highly suspicious that only one Negro criminal defendant enjoyed an acquittal in a period of two years." He says also that his companion's sentence of five years in Johnson County, his own verdict of thirty years' punishment, and the judge's reduction to a fifteen-year sentence indicate "that the Bates County jury had been unduly harsh with appellant."

■ Appellant's point is not supported by authority, and his charge rests entirely on the length of imprisonment. The punishment was within statutory limits and is not to be deemed the result of prejudice or partiality because it was assessed at or near the maximum provided for the offense. *State v. Kirkpatrick,* 428 S.W.2d 513, 517 (Mo.1968); *State v. Arnett,* 338 Mo. 907, 92 S.W.2d 897 (1936).

Appellant's complaint of ineffective assistance of counsel (Point VI) is made by trial and appellate counsel against himself; and there is no relief due appellant on this ground because the question was not presented to the trial court in the motion for new trial, and the record does not contain evidence upon which to make such a review. Accordingly, review of the charge is declined until such time as an evidentiary hearing may have been accorded on that issue under Rule 27.26, V.A.M.R. *State v. Phillips,* 460 S.W.2d 567, 569 (Mo. 1970). It should be noted, however, that counsel's hindsight concern for failure to persuade his client in this case to plead guilty in exchange for a recommendation of ten years' imprisonment has been rejected, *Cook v. State,* 511 S.W.2d 819 (Mo.1974); and his lack of previous experience does not alone demonstrate ineffectiveness of counsel, *State v. Lang,* 491 S.W.2d 12 (Mo.App. 1973).

Judgment affirmed.

All concur.